**ISLAND CREEK COAL SALES COMPANY, Plaintiff-Appellee,**

v.

**CITY OF GAINESVILLE, FLORIDA, Defendant-Appellant.**

**Nos. 83–5521, 83–5547.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 20, 1984.

Decided March 15, 1984.

Bert T. Combs, M. Stephen Pitt, Merrill S. Schell (argued), Sharon Conyer Spiegel, Wyatt, Tarrant & Combs, Louisville, Ky., for defendant-appellant.

Charles Calk, R. Allen Webb, Gess, Mattingly, Saunier & Atchison, Lexington, Ky., Martin F. Brecker, Janet Kane (argued), New York City, for plaintiff-appellee in both cases.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff-appellee in No. 83–5521.

Before EDWARDS, MERRITT and JONES, Circuit Judges.

MERRITT, Circuit Judge.

On this appeal the main question is whether the District Court properly confirmed an interim arbitration award requiring the electrical utility which initiated the arbitration proceeding to continue performance of a coal purchase contract until the arbitration panel rendered a final arbitration order. We affirm.

## I.

On July 26, 1978, Island Creek Coal Sales Company and the City of Gainesville, Florida entered into a long-term Coal Sales Agreement which provided that Island Creek would sell and Gainesville would buy coal supplied primarily from a mine known as "Holden 22." The price of coal declined, and in January of 1983, Gainesville sought to terminate its contract with Island Creek. It initiated an arbitration proceeding in Louisville, Kentucky, under the auspices of the American Arbitration Association ("AAA"), alleging that Island Creek had breached its agreement by reason of an illegal assignment of the contract and transfer of Holden 22. At the arbitration proceedings Gainesville requested as relief a "[d]eclaration that Island Creek ... ha[d] breached the Agreement and that the City of Gainesville, Florida, has the right to terminate it." Petition for Confirmation of Arbitration Award of May 23, 1983, Exhibit 2.

As its defense at the arbitration hearing, Island Creek argued that it continued to control the coal reserves at Holden 22 as required by the Agreement, that no assignment had occurred, that the transaction which prompted Gainesville's allegations of breach of contract was expressly permissible under the Agreement, and that Gainesville's consent to the transaction was unnecessary. On May 10–11, 1983, a full evidentiary hearing was conducted in Kentucky before a three-member arbitration panel, which set a schedule at the conclusion of the hearings for the submission of post-hearing briefs.

On May 16, 1983, after the arbitration hearings concluded but before the award

was issued, Gainesville announced that it intended to terminate the Agreement. On May 19, 1983, Island Creek submitted a written request to compel Gainesville to preserve the status quo until the arbitrators could decide whether in fact the City had the right to terminate.

On May 23, 1983, a telephone conference call was conducted in which counsel for Gainesville and Island Creek and the three arbitrators participated. At the conclusion of the conference call, the three arbitrators ruled that Gainesville, having previously submitted to arbitration the question of its right to terminate, would now be restrained from cancelling the agreement pending completion of the arbitration. Accordingly, the panel issued an interim order directing Gainesville to "continue performance of the contract ... by accepting shipments of coal from the Holden 22 mine until further order of this panel." Interim Order, May 23, 1983, Exhibit 4, at 1.

Refusing to accept and pay for coal as directed by the interim order, Gainesville, on May 31, 1983, commenced an action in the United States District Court for the Northern District of Florida to vacate the interim order. In that action, Gainesville claimed that, *inter alia*, Island Creek had committed fraud and violations of federal and Florida anti-racketeering statutes.

Also on May 31, 1983, Island Creek commenced an action in the United States District Court for the Western District of Kentucky, the District in which the arbitration was pending. In this action, Island Creek requested judicial confirmation of the interim arbitration order and an order preliminarily enjoining Gainesville from proceeding with that part of its Florida action in which Gainesville sought to vacate the interim order. On July 22, 1983, Chief Judge Allen granted the preliminary injunction and entered judgment confirming the interim order.

## II.

The scope of judicial review of an arbitration award is limited. Under 9 U.S.C. § 9 (1982), "the court must grant ... an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10 and 11 (1982)]." Section 10 permits the court to vacate an award only in certain limited situations, such as "[w]here the arbitrators exceeded their powers," or failed to make "a mutual, final, and definite award upon the subject matter submitted."

Gainesville argues that the District Court should have vacated the interim arbitration order because the order was issued in violation of section 10(d) of the Arbitration Act. The argument is based on a claim that the arbitrators exceeded their authority in rendering the award because the arbitrators did not have the power to grant interim equitable relief. Gainesville argues as well that the District Court lacked jurisdiction because the interim order was not a final award for the purpose of confirmation. Gainesville also contends the interim order was issued in violation of section 10(c) of the Act because Gainesville was denied due process in the emergency telephone hearing.

## III.

Whether the arbitrators exceeded their authority by awarding interim injunctive relief depends on an examination of the Agreement to determine what remedial powers the Agreement confers on the arbitrators. Article XIII of the Agreement provides that any dispute between the parties should be settled by arbitration, and provides further that the AAA Commercial Arbitration Rules are incorporated in the Agreement. In addition, Article XVIII provides that arbitrators must grant certain "specific" remedies in certain situations, *e.g., for violation of sulphur content* specifications, but that "for any other breach of the Agreement" damages will be determined by the arbitrators according to express rules defining the measure of damages. The Agreement only addresses those possible breaches of contract in which money damages are appropriate; it is silent in regard to the possibility of equitable relief.

■ The authority for equitable relief arises from Rule 43 of the AAA Commercial Arbitration Rules which the Agreement incorporates by reference. Rule 43 provides that "[t]he arbitrator may grant any remedy or relief which the arbitrator deems just and equitable and within the scope of the agreement of the parties, including but not limited to, specific performance of a contract." Under this Rule an arbitrator can order specific performance to preserve the status quo under the contract unless the contract expressly prevents such relief. The Agreement here does not provide any specific limitations on the power of the arbitrators under Rule 43, and we are required to give deference to the arbitrators' interpretation of the Rule and the Agreement unless they have clearly exceeded their authority. We conclude that the interim award in the instant case requiring specific performance is not outside the scope of the Agreement and, thus, does not exceed the arbitrators' powers. *See Marion Manufacturing Co. v. Long,* 588 F.2d 538 (6th Cir.1978) (upholding arbitration order of specific performance). We find nothing in the contract between the parties or in Kentucky law that prevents the arbitrators from ordering the interim injunctive relief awarded in this case. *See Sperry International Trade, Inc. v. Israel,* 689 F.2d 301 (2d Cir.1982). In *Sperry,* the Court held that arbitrators acting under the AAA Rules may grant interim injunctive relief by exercising the "power to prevent" drawing down the proceeds of a letter of credit, "pending a decision [by the arbitrators] on the merits" of the claims. 689 F.2d at 306.

■ Gainesville's final argument under section 10(d) is that the interim order is nonfinal and thus not subject to confirmation. This argument overlooks the rule that "an 'interim' award that finally and definitively disposes of a separate independent claim may be confirmed 'notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration.' " *Eurolines Shipping Co. v. Metal Transport Corp.,* 491 F.Supp. 590, 592 (S.D.N.Y.1980), *quoting*

*Puerto Rico Maritime Shipping Authority v. Star Lines, Ltd.,* 454 F.Supp. 368, 372 (S.D.N.Y.1978). *See also Sperry International Trade, Inc.,* 689 F.2d 301 (2d Cir. 1982); *Sportswear Garment Workers' Union, Local 246 v. Evans Manufacturing Co.,* 318 F.2d 528 (3d Cir.1963). Chief Judge Allen concluded that "[t]he interim award disposes of one self-contained issue, namely, whether the City is required to perform the contract during the pendency of the arbitration proceedings. Th[is] issue is a separate, discrete, independent, severable issue." Memorandum Opinion, July 24, 1983, at 8. We do not find this conclusion to be in error. Accordingly, we find that the interim order was not issued in violation of section 10(d).

## IV.

■ We also reject Gainesville's numerous additional arguments that the interim order was issued in violation of section 10(c) because the arbitrators denied Gainesville a fair hearing and due process throughout the arbitration proceedings and that the District Court below did not have exclusive jurisdiction to confirm the arbitrators' interim order. Arbitrators need not provide all the procedural formalities of a court of law, *American Almond Products Co. v. Consolidated Pecan Sales Co.,* 144 F.2d 448, 451 (2d Cir.1944), and defects in proceedings prior to or during arbitration may be waived if a party participates in the arbitration proceedings without objection. *Order of Railway Conductors v. Clinchfield,* 407 F.2d 985, 988 (6th Cir.), *cert. denied,* 396 U.S. 841, 90 S.Ct. 104, 24 L.Ed.2d 92 (1969).

■ We have reviewed the record, and we do not find that Chief Judge Allen erred in his conclusion that the arbitration proceedings were fair and in accordance with due process and that Gainesville participated in those proceedings without objection. Gainesville's arguments in this respect are without merit.

■ Contrary to Gainesville's final assertion, the District Court below had exclusive

jurisdiction to review the arbitrators' interim order. The arbitration and award in question occurred in Kentucky, and 9 U.S.C. § 9 provides that "[i]f no court is specified in the agreement of the parties [for confirming the arbitration award], then such application [for a confirmation order] may be made to the United States court in and for the district within which such award was made." This statutory provision and the relevant case law clearly indicate the United States District Court for the Western District of Kentucky was the proper court to confirm the arbitration award. *See, e.g., Commonwealth Edison Co. v. Gulf Oil Co.*, 541 F.2d 1263, 1272 n. 16 (7th Cir.1976); *City of Naples v. Prepakt Concrete Co.*, 490 F.2d 182 (5th Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974); *United States ex rel. Chicago Bridge & Iron Co. v. ETS–Hokin Corp.*, 397 F.2d 935, 938 (9th Cir.1968).

Accordingly, we affirm the judgment of the District Court.