Joseph L. DOMBROWSKI, Plaintiff,

v.

SWIFTSHIPS, INC., Defendant.

No. 94–6514–CIV–ZLOCH.

United States District Court, S.D. Florida.

Aug. 30, 1994.

Guy B. Bailey, Scott L. Cagen, Miami, FL, and John E. Galloway, and John J. Erny, Galloway Johnson Tompkins & Burr, New Orleans, for plaintiff.

Philip A. Franco, Sean D. Moore, Adams & Reese, New Orleans, LA, and J. Michael Fitzgerald, Miami, FL, for defendant.

## ORDER

ZLOCH, District Judge.

## I. INTRODUCTION

THIS MATTER is before the Court upon the Motion To Reconsider Order Transferring Action To The United States District Court For The Eastern District Of Louisiana (DE 11), filed by the Defendant, Swiftships, Inc., and upon the Court having reviewed the record and being otherwise fully advised in the premises.

The Court notes that the Defendant, Swiftships, Inc., seeks reconsideration of this Court's Order (DE 9) which transferred the above-styled cause to the Eastern District of Louisiana pursuant to Title 28 U.S.C. § 1404(a) (1994). Since this Court correctly construed and applied Section 1404, considered only those relevant factors incident to ruling upon such a transfer motion, and properly exercised judicial discretion, the Defendant's motion is without merit. For the benefit of the parties, the Court shall reiterate the analysis of the prior order of transfer in greater detail.

## II. *PROCEDURAL BACKGROUND*

Under Title 9 U.S.C. § 10 (1994) of The Federal Arbitration Act ("FAA"), the Defendant, Swiftships, Inc., filed a motion to vacate an arbitration award in this district as part of a multiple-case dispute that has been pending in the Eastern District of Louisiana since 1992. In response, the Plaintiff, Joseph L. Dombrowski, moved this Court for an order transferring venue to the Eastern District of Louisiana under Title 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, and in the interests of justice.

After due consideration of the Plaintiff's motion, this Court exercised its discretion under the traditional Section 1404(a) analysis. As stated by Title 28 U.S.C. § 1404(a):

For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any action to any other district or division where it might have been brought.

In applying Section 1404(a), this Court undertook the familiar two-step inquiry. Under the first prong, a district court needs to ascertain if the action "might have been brought" in the transferee district. In this regard, this Court's prior order held that: "clearly, this question is answered in the affirmative." (DE 9 at 1). Since this finding serves as the primary motivation of the Defendant's motion for reconsideration, this opinion subsequently examines this issue at greater length.

As to the second prong of the section 1404(a) analysis, a district court must proper-ly weigh the convenience of the parties and witnesses, and the interests of justice. In the prior order of transfer, this Court observed:

[T]he courts have traditionally considered several factors in determining whether the doctrine of forum non conveniens should apply to a particular case. Those factors are: (1) convenience of the parties; (2) convenience of the witnesses; (3) relative ease of access to sources of proof; (4) availability of process to compel presence of unwilling witnesses; (5) cost of obtaining presence of witnesses; and (6) the public interest.

(DE 9 at 2) (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Based upon these factors, this Court noted in the transfer order that "the facts supporting transfer under these standards are abundant." (DE 9 at 2). In fact, as an illustration, this Court made specific reference to the fact that the Defendant's principal place of business is located in Morgan City, Louisiana, and that the essential dispute between the parties has been pending in the Eastern District of Louisiana since 1992.

Based on these findings under Section 1404(a), this Court granted the motion to transfer. Moreover, this Court also notes that a reexamination of its prior order, made in the light of the supplemental filings of the parties and the factors urged by the litigants, would not alter this Court's original conclusion. Accordingly, before this Court examines the specifics of the Defendant's motion to reconsider as it relates to the first prong of Section 1404(a), this Court reaffirms its prior ruling in all other respects.

## III. *MOTION TO RECONSIDER*

The principle argument of the Defendant's opposition to the change in venue is based on the first prong of the Section 1404(a) analysis. In its motion to reconsider, the Defendant suggests that this case could not "have been brought" in the Eastern District Of Louisiana where the other cases were filed.

The Defendant appears to believes that, regardless of the convenience of the parties and witnesses or the interests of justice, the

language of Section 10 of the FAA mandates exclusive jurisdiction in the Southern District of Florida. In particular, the Defendant thinks that the following words clearly articulate an express jurisdictional limitation: "the United States court in and for the district wherein the award was made may make an order vacating the award...." Title 9 U.S.C. § 10(a) (1994).

Thus, in spite of the concerns embodied in Section 1404(a), the Defendant surmises that this Court cannot transfer venue of this case, even if that transfer is to the most convenient forum. Indeed, the Defendant believes that its construction of the FAA is somehow compelled by *Naples v. Prepakt Concrete Co.*, 490 F.2d 182 (5th Cir.1974), and that this Court made a "manifest error of law" in its prior order of transfer. *See* (DE 11 at 1).

After a careful review of the law, however, this Court finds that the Defendant's opinion of Section 10 is in error, and that this Court's prior order correctly determined that the Eastern District of Louisiana is a district where this case "might have been brought."

## IV. *DISCUSSION*

### A. *Lack of Binding Authority*

At the outset, this Court notes that neither *Naples v. Prepakt Concrete Co.*, 490 F.2d 182 (5th Cir.1974), nor any binding circuit opinion in the Eleventh Circuit or the Fifth Circuit, has resolved the current venue issue arising under Section 10 of the FAA.

In the *Prepakt* case, the former Fifth Circuit did not engage in the present question of statutory construction, but rather concerned itself with an issue of waiver under Section 9 of the FAA. In *Prepakt,* a Florida municipality and an Ohio corporation agreed in writing that an arbitration association would decide the location of any arbitration proceedings that arose from the parties' contract. When a contractual dispute did arise, the arbitration association directed that the arbitration proceedings take place in Ohio. In response, the city objected and sought to enjoin the Ohio proceedings. Ultimately, the Fifth Circuit in *Prepakt* held that the city had waived any objection to the Ohio arbitration and that no injunction should be issued.

In this way, the *Prepakt* court based its holding upon the waiver doctrine, and the court never addressed whether an order to vacate an arbitration award is either exclusively or permissively within the jurisdiction of the United States court "in and for the district wherein the award was made." Title 9 U.S.C. § 10(a) (1994). In fact, the Fifth Circuit itself has defined *Prepakt* as merely holding "that because a party had *waived* its right to designate venue in Florida, the district court in Florida could not enjoin valid confirmation proceedings in Ohio." *Jolley v. Paine Webber Jackson & Curtis, Inc.,* 864 F.2d 402, 405 (5th Cir.1989) (emphasis added).

This reading of *Prepakt* is totally consistent with the many district courts that have held that the *Prepakt* case does not dispose of the venue issue. *See Wing v. J.C. Bradford & Co.,* 678 F.Supp. 622, 626 (N.D.Miss. 1987) (held that *Prepakt* was "distinguishable" and that the district court had jurisdiction to confirm the arbitration award even though the award was entered in another district); *Tesoro Petroleum Corp. v. Asamera (South Sumatra) Ltd.,* 798 F.Supp. 400, 403 (W.D.Tex.1992) (held that the circuit "has not directly addressed this issue," and that *Prepakt* was influenced by "principles of comity, judicial restraint and waiver"); *Enserch International Exploration, Inc. v. Attock Oil Co.,* 656 F.Supp. 1162, n. 1 (N.D.Tex. 1987) (District court "does not read *Prepakt* as squarely deciding the question presented.").

Accordingly, since this Court is without binding precedent, this Court examines the venue issue arising under Section 10 of the FAA as a case of first impression.

### B. *Plain Language Approach*

The starting point for interpreting a statute is, of course, the "language of the statute itself." *Consumer Product Safety Com. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *See also United States v. Kahn,* 415 U.S. 143, 151, 94 S.Ct. 977, 982, 39 L.Ed.2d 225 (1974) (The starting point is the "precise wording chosen by Congress."). As a general rule of statutory construction, where the terms of a

statute are unambiguous, "judicial inquiry is complete." *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

Under this plain language approach, however, the particular inquiry is not the "abstract force" of the words or what they may comprehend, but rather in what "sense were they intended to be understood or what understanding they convey when used in the particular act." *Marek v. Chesny,* 473 U.S. 1, 15, 105 S.Ct. 3012, 3020, 87 L.Ed.2d 1 (1985). As defined by the Supreme Court, the "plain" meaning of a statute does not include an overly literal application that is "demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

Indeed, the plain language approach to statutes is essentially a rational approach. As the interpretative partners of Congress, the courts have a responsibility to review the text of a statute with a common-sense degree of precision in an effort both to ascertain the meaning of a statute, and to root out and resolve any linguistic flaws. In every case, the courts must make a disciplined review of the statute's text and avoid carrying a plain language construction "to the point of producing untenable distinctions and unreasonable results." *Marek* 473 U.S. at 27, 105 S.Ct. at 3026.

This common-sense reliance upon the plain statutory language also helps courts avoid the danger of mistakenly substituting their will for that of the legislature, and thus the judicial branch properly fulfills its role within the constitutional separation of powers. This is exactly what Alexander Hamilton was concerned about when he wrote:

> The Courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body.

*The Federalist No. 78* at 396 (Alexander Hamilton) (Garry Wills ed., 1982). Without such a sensible and disciplined approach to language, courts inevitably thwart the task of making "sense rather than nonsense out of the corpus juris." *West Virginia Univ. Hosps. v. Casey,* 499 U.S. 83, 100, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991).

### C. *Linguistic Analysis*

In order to conduct a plain language analysis of the FAA with this required degree of precision,[1] this Court must first delineate several terms of statutory analysis that are frequently misapplied by the courts and obviously misunderstood by the Defendant. In particular, both lawyers and the courts must appreciate and understand the three types of uncertainty that courts confront in the construction of statutory language: generality, vagueness, and ambiguity. While in this case the Court focuses primarily upon statutory ambiguity, the Court needs to predicate its analysis by discussing each uncertainty and by drawing certain distinctions between all three concepts. This clarification is required because a linguistic analysis of the statute made without these distinctions would threaten to prevent a full understanding of the present case and a proper construction of the legislative intention.

■ The first kind of uncertainty is "generality." This term refers to when specific statutory language "is not limited to a unique referent and thus can denote more than one" thing. *See* Reed Dickerson, *The Interpretation And Application Of Statutes* 51 (1975). Since generality permits a simultaneous reference to a number of possible referents, a court is often uncertain as to the specific applications of a general term.

For example, let us assume that a court needed to ascertain whether the statutory phrase "registered voter" applied to a particular defendant. In this hypothetical, the general term "registered voter" refers to every member of a vast and constantly changing class of people that numbers in the hun-

---

1. For a useful discussion of linguistic analysis in general, see *United States v. Nofziger And The Revision Of 18 U.S.C. § 207: The Need For A New Approach To The Mens Rea Requirements Of Federal Criminal Law,* 65 Notre Dame L.Rev. 803 (1990). This Note outlines the appropriate process for resolving the difficult statutory construction problems of criminal mens rea.

dreds of millions. Obviously, this general term may pose difficulties in its expansive application, yet the uncertain phrase is nevertheless marked by definable boundaries.

▪ In contrast, a second type of linguistic uncertainty that courts find in the law is "vagueness." This term "refers to the degree to which, independent of equivocation, language is uncertain in its respective application to a number of particulars." *See* Reed Dickerson, *The Fundamentals Of Legal Drafting* 39 (1986) ("Fundamentals"). Here, the uncertainty originates, not in the broad application of a particular boundary, but rather in the lack of a specific boundary itself.

For example, let us assume that a court needed to ascertain whether a particular defendant's conduct constituted a lack of "reasonable care." In this hypothetical, the boundaries of the standard are deliberately unclear to provide judicial flexibility, and the language is thus vague, not general, in its application to particular conduct.

In order to be "general", the phrase "reasonable care" would need a definable boundary. For instance, the same words could also be used in a different context to make a "simultaneous reference" to certain statutory examples of negligence *per se*—(i.e. exceeding a posted speed limit requires a finding of negligence). In that case, the lack of "reasonable care" phrase would be a general reference, not a vague reference, to the various types of *per se* negligence conduct. It would be a "general" term, because here the statutory categories provide a boundary between what is, and what is not, a *per se* lack of "reasonable care."

Lawyers must master these two concepts and distinguish them from the concept of ambiguity, because generality and vagueness, (when passing constitutional muster), are usually not legal defects or diseases of language. Instead, these two concepts serve as carefully designed tools of legislation that "give leeway to those charged with administering the statute." *See Fundamentals* at 42. This leeway, or sphere of indefiniteness, serves a fundamental purpose in the law, because it allows the original intent of the legislation to be put to "fresh and not alto-

gether predictable uses and applications." *See* Dennis Lloyd, *The Idea of Law* 299 (1976). Accordingly, in construing statutes, courts must draw a vital distinction between these two useful concepts and the existence of ambiguity in the law.

▪ Specifically, the courts must draw this distinction because statutory ambiguity, unlike generality and vagueness, is invariably defective. In the search for the true meaning of statutory language, ambiguity gives equivocation, not guidance. It leaves the reader with at least two, apparently inconsistent, alternatives each of which, taken alone, seems free of ambiguity and appears to be meaningful. *See Oxford English Dictionary* 263 (3d ed. 1933). Instead of providing valuable flexibility, legal ambiguity asks the courts to maintain two or more "logically incompatible beliefs" or attitudes at the same time. *See Webster's Third New International Dictionary* 66 (1981).

Since this type of inconsistency always encumbers the rule of law, justice requires a court to analyze the precise nature of statutory language in an effort to isolate any ambiguities, and, whenever possible, to resolve them consistent with basic concepts of construction.

### D. *Isolation of Ambiguity*

When construing statutes, courts must detect ambiguity in any form that it appears. In the instant case, this Court has performed the proper review of the plain language of the FAA and finds that three specific types of ambiguity infect Section 10 with respect to the venue issue: semantic ambiguity, syntactical ambiguity, and contextual ambiguity.

The statute provides in pertinent part that:
In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon application of any party to the arbitration....

Title 9 U.S.C. § 10(a) (1994).

In this passage, the words "may make" present the first form of ambiguity. To be exact, the words create a semantic ambiguity, because the words themselves are capable of multiple, inconsistent meanings. The

inconsistency concerns whether these words are words of illustration, or instead words of limitation. After reading the text, the question persists: Did Congress intend the courts to read the words "may make" as a simple illustration of supplementary venue, i.e. this court "[also] may make," or should the words be read to mean that this court "[only] may make," thus restricting venue? This "permissive verses exclusive" ambiguity also emanates from the syntactical structure of the provision.

■ In statutory construction, a syntactical ambiguity arises from an uncertainty of "modification or reference within the particular instrument." *See Fundamentals* at 36. Here, the ambiguous modification lingers in the phrase: "in and for the district wherein the award was made." Clearly, this phrase, in either reading of the statute, modifies the term "United States court", but it is unclear how strongly this modifying phrase, in effect, travels along the sentence to limit the subsequent phrase: "may make an order vacating the award."

Typically, a court examines an ambiguous modifier to see what it modifies in a provision, but in this case the more appropriate question is how strongly does it modify. If the intent of Congress was to vigorously accentuate the ambiguous modifier throughout the sentence, then this change in emphasis would require a court to read the words "may make" an award, to mean that this court "[only] may make" an award. Likewise, if Congress did not intend to accentuate this phrase, venue would remain permissive and the modifier would merely describe an additional district court within which an order "[also] may" be made.

■ The last form of ambiguity in section 10 lies in its context. A contextual ambiguity entails how a statement (or series of statements) "affects or is affected by" another statement (or series of statements) with which it ostensibly conflicts. *See Fundamentals* at 36. In this case, the specific ambiguities concern how the successive sections of the FAA should be read as a whole. Essentially, the equivocation is: Did Congress intend for the courts to read Section 10 independently, without reference to other

parts of FAA, or should Section 10 be viewed holistically with its companion sections? In particular, the question involves how FAA Sections 3 and 9 affect, if at all, Section 10.

In this analysis, this Court begins, as always, with the text. Under Section 3 of the FAA, Congress states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration ... the court in which suit is pending ... shall ... stay the trial of the action until such arbitration has been had.

Title 9 U.S.C. § 3 (1994). While the Defendant in the instant case apparently finds Section 3 irrelevant to the venue issue, the provision nevertheless raises a contextual ambiguity under the Defendant's exclusive construction of venue.

Here, the apparent inconsistency originates in the stay provision of Section 3. Namely, why would a court issue a "stay" pending arbitration if the court were without jurisdiction, as the Defendant urges in its restrictive approach, to later confirm or vacate the award? In *NII Metals Services, Inc. v. ICM Steel Corp.*, 514 F.Supp. 164, 166 (N.D.Ill.1981), the district court observed that an exclusive construction of venue "would make [a] 'stay' meaningless—a stay that could only lead to ultimate dismissal whichever side prevailed in the arbitration."

Similarly, Congress enacted another provision in the FAA which may affect the venue interpretation of Section 10. In Section 9, Congress states that:

> If the parties ... have agreed that a judgment of the court shall be entered upon [an] award made pursuant to [an] arbitration ... the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title [9 U.S.C. §§ 10, 11]. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made....

Title 9 U.S.C. § 9 (1994). In this Section, Congress expressly permits venue for a mo-

tion to confirm an award in the "court specified in the agreement of the parties."

In this instance, an ambiguity flows from the tension between the above "freedom of venue" clause in Section 9 and the Defendant's restrictive interpretation of venue in Section 10. Such a contextual inconsistency arises, because the courts have uniformly held that there is no basis for creating a difference between the venue provisions of §§ 9 and 10. *See In re VMS Securities Litigation,* 21 F.3d 139, 142 (7th Cir.1994).

Given these illustrative examples of the apparent semantic, syntactical, and contextual inconsistencies of the FAA, this Court finds that Section 10 is ambiguous with respect to the nature of venue.

### E. Canons of Construction

As here, when a statute is ambiguous, a Court must "draw upon those common-sense assumptions that must be made in determining direction without a compass." *Buckley v. Valeo,* 424 U.S. 1, 77, 96 S.Ct. 612, 662, 46 L.Ed.2d 659 (1976). These presumptions, or canons of construction, are appropriate, because "Congress legislates with knowledge of ... [the] basic rules of statutory construction." *Rowland v. California Men's Colony Unit II Men's Advisory Council,* —— U.S. ——, ——, 113 S.Ct. 716, 720, 121 L.Ed.2d 656 (1993).

For example, when a statute's language seems "insufficiently precise, the natural way to draw the line is in light of the statutory purpose." *Mills Music, Inc. v. Snyder,* 469 U.S. 153, 186, 105 S.Ct. 638, 656, 83 L.Ed.2d 556 (1985). In fact, in all cases of statutory construction, our task is to interpret the words of the statute "in light of the purpose *Congress* sought to serve." *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979) (emphasis added).

In this instance, the Supreme Court clearly focuses the light in which the FAA must be viewed. As articulated in *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the "clear intent" of Congress in the FAA is the "rapid and unobstructed enforcement of arbitration agreements" to resolve the arbitration of disputes as "quickly and easily as possible." *Id.* at 22–23, 103 S.Ct. at 940–41; *see also Venue For Motion To Confirm Or Vacate Arbitration Awards Under The Federal Arbitration Act,* 57 Fordham L.Rev. 653 (1989).

■ Thus, the FAA is essentially a remedial statute designed to remedy what the Supreme Court calls a two-fold problem: "the old common-law hostility toward arbitration, and the failure of state arbitration statutes to mandate enforcement of arbitration agreements." *Southland Corp. v. Keating,* 465 U.S. 1, 14, 104 S.Ct. 852, 860, 79 L.Ed.2d 1 (1984). Indeed, the Supreme Court characterizes the FAA as "a broad enactment appropriate in scope to meet the large problems Congress was addressing." *Id.,* 465 U.S. at 14, 104 S.Ct. at 860.

Therefore, in light of congressional intent, this Court must liberally construe the language of the FAA, like any other remedial statute, to effectuate its purpose. As the Supreme Court noted in *Peyton v. Rowe,* 391 U.S. 54, 65, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968), this type of approach is "consistent with the canon of construction that remedial statutes should be liberally construed." *See, e.g.,* Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are To Be Construed,* 3 Vand.L.Rev. 395 (1950); Theodore Sedgwick, *Construction of Statutes* 270 (1st ed. 1857).

Finally, this Court relies upon another common-sense assumption that certain types of linguistic ambiguity can be resolved through a sensible examination of the legal surroundings of the text. As the Supreme Court noted in *Deal v. United States,* —— U.S. ——, ——, 113 S.Ct. 1993, 1996, 124 L.Ed.2d 44 (1993):

> [A] fundamental principle of statutory construction (and, indeed, of language itself) [is] that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.

Likewise, in *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 555, 102 S.Ct. 1912, 1935, 72 L.Ed.2d 299 (1982), the Supreme Court observed: "[W]here ambiguity exists it is not

irrelevant, to the process of ascertaining the intention of Congress, to consider specifically other statutes on the same subject." Essentially, a statute, "like other living organisms, derives significance and sustenance from its environment, from which it cannot be severed without being mutilated." *United States v. Monia,* 317 U.S. 424, 432, 63 S.Ct. 409, 413, 87 L.Ed. 376 (1943) (Justice Frankfurter dissenting opinion).

█ With these common-sense principles in mind, this Court finds it feasible both to resolve the linguistic ambiguities of Section 10 and to rescue the original intent of Congress.

### F.  *Statutory Construction*

Having first examined the plain language of Section 10 and isolated the nature and structure of its ambiguities, this Court finds that it can glean the linguistic intent of Congress from the remedial purpose of the statute and the legal setting within which the provision sits.

In view of the purpose of the FAA, this Court finds it unwarranted to resolve the ambiguity of Section 10 by reading into the statute an implied, strict venue construction. In particular, this Court fails to see how resolving the semantic and syntactical ambiguities of Section 10 in a restrictive manner facilitates the "rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 22–23, 103 S.Ct. 927, 940–41, 74 L.Ed.2d 765 (1983). As the Supreme Court warns:

> In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.

*Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). In this case, restrictive venue actually obstructs the policy of the FAA and it places upon the judiciary a pointless and wasteful burden that the Congress could not have intended in light of the statute's remedial purpose.

Likewise, the purpose of Congress resolves any contextual inconsistencies within the act. As the Supreme Court observed in *Regan v.*

*Time, Inc.,* 468 U.S. 641, 668, 104 S.Ct. 3262, 3277, 82 L.Ed.2d 487 (1984):

> When interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature.

As discussed previously, restricting venue under Section 10 is at odds with Sections 3 and 9 of the FAA, and a restricted view of Section 10 in effect nullifies various provisions within the Act. Accordingly, the courts should avoid these apparent inconsistencies and adopt a permissive interpretation of venue. In this way, the courts can give life to the entire congressional design and facilitate the resolution of disputes in a manner that avoids the "costliness and delays of litigation." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 510–11, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974).

This reading of Section 10 is further supported by the legal surroundings of the FAA. In *West Virginia Univ. Hosps. v. Casey,* 499 U.S. 83, 100, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991), the Supreme Court noted that where a statutory term presented for review the first time is ambiguous, courts should construe it to contain "that permissible meaning which fits most logically and comfortably into the body of both previously and subsequently enacted law." *See also* 2 J. Sutherland, *Statutory Construction* § 5201 (3d. F. Horack ed. 1943). Consequently, the courts in this instance must construe the venue of Section 10 to fit comfortably with the other venue provisions within the law.

For example, the courts should not adopt the restrictive venue construction, because it negates the power of the general venue statute. *See* Title 28 U.S.C. § 1391 (1994). As the Supreme Court noted:

> [W]here two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.

*Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1018, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815

(1984). In this case, there is no clearly expressed intention that a court possessing jurisdiction under Section 1391 must surrender that power under Section 10 of the FAA.

Likewise, the courts should not adopt the restrictive construction of venue, because Section 10 does not contain the customary "exclusive" language of a mandatory special venue provision. *See* Title 40 U.S.C. § 270b(b) (1994) ("Every suit instituted under this section shall be brought ... in the *United States District Court for any district in which the contract was to be performed and executed and not elsewhere....*") ("The Miller Act"); Title 42 U.S.C. § 7604(c)(1) (1994) ("Any action respecting ... an order ... may be brought only in the judicial district in which source is located.") ("The Clean Air Act"). Instead, the special venue provision of Section 10 should be seen as a venue supplement, because such an interpretation, as in other remedial statutes, logically promotes the purpose of the Congress. *See* Title 28 U.S.C. § 1396 (1994) ("The Venue Statute"—IRS tax provision); *See also,* Title 15 U.S.C. § 15(a) (1994) ("The Clayton Act"); Title 18 U.S.C. § 1965 (1994) ("The RICO Act").

Lastly, in reviewing the environment of the FAA, the courts should understand the venue of the federal courts in conjunction with the power of the state courts. For example, the substantive nature of the FAA gives federal and state courts concurrent jurisdiction over arbitration disputes. *See Ultracashmere House, Ltd. v. Meyer,* 664 F.2d 1176, 1180 (11th Cir.1981). Accordingly, the courts should avoid the legal anomaly that any state court with jurisdiction may vacate an award but only one federal court may do so. As to Section 3 and 4 of the FAA, the Supreme Court has already rejected this type of restrictive oddity. *See Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 26 nn. 34–35, 103 S.Ct. 927, 943 nn. 34–35, 74 L.Ed.2d 765 (1983). Clearly, the legislative environment of the FAA justifies the permissive interpretation of venue.

Thus, after a disciplined review of the ambiguities of Section 10, this Court finds that the remedial purpose of the statute, and the legal setting within which the provision sits, reveal that Congress intended a permissive construction of venue.

### G. *Review of Caselaw*

This Court's construction of Section 10 is supported by a review of the relevant caselaw. While there is a split of authority in the circuit courts regarding the nature of venue under Sections 9 and 10 of the FAA, the more persuasive precedent coincides with the viewpoint of this Court. The most recent of these rulings comes from the Seventh Circuit.

In a structured and conscientious opinion, the Seventh Circuit addressed the venue aspects of the FAA in *In re VMS Securities Litigation,* 21 F.3d 139 (7th Cir.1994). As a threshold question, the court first concluded that, due to a "near unanimity of opinion" in the courts, Sections 9 and 10 must "be treated similarly for venue purposes." *Id.* at 142.

Accordingly, by looking at the language of the two Sections in tandem, the court realized that the FAA is not as explicit as other statutes which "unequivocally restrict venue." *Id.* at 144. This linguistic equivocation is crucial. As the Seventh Circuit observed:

> [It] will look beyond the express language of a statute only where (1) that statutory language is ambiguous or (2) where a literal interpretation would lead to an absurd result or (3) thwart the purpose of the overall statutory scheme.

*Id.* at 144. In the case of the FAA, the court determined that an "ambiguity arises from the phrasing of the supposed restriction of venue in §§ 9 and 10." *Id.*

Having made this determination, the court naturally sought to resolve the ambiguity. After mentioning their own concerns of the "absurd results," and potentially "wasteful and uneconomical" effects of restricted venue, the court ultimately noted the more pertinent issue, i.e. that restricting venue violates the "policy" of Congress, and that it "would thwart the purposes of the FAA." *Id.* at 144–45. Consequently, the Seventh Circuit construed venue as permissive.

This ruling is consistent with the opinions of the Second Circuit. In 1985, the Second Circuit addressed the nature of venue under

Section 9 of the FAA in *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698 (2nd Cir.1985). In *Smiga,* the Second Circuit held:

> [O]nce a federal court has subject matter jurisdiction over an action, it may confirm an arbitration award even though it was not the district where the award was granted.

*Id.* at 706. Subsequently, the Second Circuit ruled that actions under Section 10 and Section 9 of the FAA are "essentially identical" actions. *See Motion Picture Laboratory Technicians Local 780, I.A.T.S.E. v. McGregor & Werner, Inc.,* 804 F.2d 16, 19 (2nd Cir.1986). In light of these cases, many district courts have adopted the permissive view of venue. *See Alexander Ins. Ltd. v. Executive Life Ins. Co.,* 1991 WL 150224, 1991 U.S.Dist. LEXIS 10432 (S.D.N.Y.1991); *Elgart v. Sono–Tek Corp.,* 1989 WL 136280, 1989 U.S.Dist. LEXIS 13519 (E.D.Pa.1989); *Concourse Beauty School, Inc. v. Polakov,* 685 F.Supp. 1311 (S.D.N.Y.1988); *Amalgamated Clothing & Textile Workers Union etc. v. Federation of Union Representatives,* 664 F.Supp. 995 (S.D.W.Va 1987).

After reviewing these decisions, this Court reaffirms its initial finding that "permissive" venue was the intent of Congress, and that this construction should be used by the courts in the future. *See Nordin v. Nutri/System, Inc.,* 897 F.2d 339, 344 (8th Cir. 1990) (referring to section 9 language as "permissive"). This Court notes, however, that while the permissive venue cases have been correctly decided, the permissive construction of venue is not universal.

A perfect example of this dissent can be found in *Tesoro Petroleum Corp. v. Asamera (South Sumatra) Ltd.,* 798 F.Supp. 400, 403 (W.D.Tex.1992). In this case, the district court demonstrates the dangers in failing to make a meticulous statutory inquiry. In regard to Section 10, the *Tesoro Petroleum* court held:

> A straight-forward reading of this provision reveals that the permissive "may" does not refer, as Tesoro argues, to which court is authorized to vacate an arbitration award, but to the permissive nature of the relief that the district court is empowered

to grant. Likewise, the statutory language concerning which district court may vacate an arbitration award is clear and unambiguous and refers only to "the United States court in and for the district wherein the award was made...." Therefore, the Court finds that 9 U.S.C. § 10(a) mandates that the only proper federal court in which an action to vacate an arbitration award may be filed is the court in and for the district wherein the award was made.

*Tesoro Petroleum,* 798 F.Supp. at 403–404.

In its "straight forward" reading of the text, the district court made several errors. First, the court ignored the contextual ambiguities of Section 10 that arise from the affects of Sections 3 and 9. Second, the court missed the semantic and syntactical ambiguity found in the Section 10 by making two faulty conclusions: 1) that the words "may make" could only have one meaning, and 2) that they were thus "permissive" solely with respect to the nature of relief. Lastly, and most importantly, since the court mistakenly found Section 10 "clear and unambiguous" with respect to venue, the district court ultimately construed the statute in contravention of "clear" Congressional intent. *See Cone,* 460 U.S. at 23, 103 S.Ct. at 941.

This Court observes, however, that other courts have shared the narrow *Tesoro Petroleum* approach. *See Enserch International Exploration, Inc. v. Attock Oil Co.,* 656 F.Supp. 1162, 1167 (N.D.Tex.1987) (Court issued an exclusive venue interpretation even though its decision admittedly perpetuates a legal "anomaly."); *Soo L. R. Co. v. Chicago & North Western Transp. Co.,* 737 F.Supp. 68 (D.Minn.1990). In fact, certain circuit courts have read venue in the FAA as restricted. Nevertheless, a careful scrutiny of these cases reveals that their restrictive construction of venue is inaccurate. The first of these opinions comes from the Ninth Circuit.

In a trinity of ill-reasoned opinions, the Ninth Circuit has cornered itself into an untenable position regarding venue. In 1968, the Ninth Circuit held that Section 10 made venue exclusive. Without any analysis, the Court stated:

The arbitration in this case was held, and the award was made by the arbitrators at San Francisco, California, and not in the District of Arizona. We agree with the District Court of Arizona that it was without jurisdiction to set aside the arbitration award.

*United States ex rel. Chicago Bridge and Iron Co. v. Ets–Hokin Corp.*, 397 F.2d 935, 938 (9th Cir.1968). In this passage, the court failed to make a disciplined, plain language approach to the statutory text, and consequently made an erroneous and unexplained construction of the statute.

Later in 1985, the Ninth Circuit reaffirmed the *Ets–Hokin* holding and noted that it places "primary reliance on where the arbitration was held." *Central Valley Typographical Union No. 46 v. McClatchy Newspapers*, 762 F.2d 741, 744 (9th Cir.1985). Here again, the Ninth Circuit failed to perform a disciplined analysis of the statutory language, and thus went on in the opinion to engage in a premature study of the words "was made" in Section 10. While confronting the vagueness of the "was made" standard, the Ninth Circuit overlooked the ambiguities involved in the venue issue, and neglected even to attempt an examination of the intent of Congress when Section 10 of the FAA was drafted.

Most recently, the Ninth Circuit extended the *Ets–Hokin* and *Central Valley* decisions to Section 9 of the FAA. In *Sunshine Beauty Supplies v. United States Dist. Court for Cent. Dist.*, 872 F.2d 310, 312 (9th Cir.1989), the court mentioned that there was a "split of authority" regarding the venue issue, and then, without explanation, concluded that:

> Because we find no basis for creating a distinction between the venue provisions of Sections 9 and 10, ... we conclude that the district court erred in transferring venue of Sunshine's motion to confirm the arbitration award.

*Sunshine*, 872 F.2d at 312. Here, the *Sunshine* Court properly treated Sections 9 and 10 similarly for venue purposes, but mistakenly expanded the *Ets–Hokin* construction of venue. Once again, the language and intent of Congress failed to play a major role in the opinion.

In 1984, the *Ets–Hokin* infirmity spread to the Sixth Circuit. In *Island Creek Coal Sales Co. v. Gainesville*, 729 F.2d 1046 (6th Cir.1984), the Sixth Circuit adopted the restrictive Ninth Circuit approach with a single sentence:

> This statutory provision [Section 9] and the relevant case law clearly indicate the United States District Court for the Western District of Kentucky was the proper court to confirm the arbitration award.

*Island Creek*, 729 F.2d at 1050. While citing the flawed *Ets–Hokin* opinion, the Sixth Circuit also incorrectly cited the *Prepakt* case as precedent for exclusive venue, and further misread an extraneous Seventh Circuit footnote as additional authority for the *Island Creek* holding. *See Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272 n. 16 (7th Cir.1976).

The Sixth Circuit's reliance upon these last two cases is mystifying. As this Court discussed previously, the *Prepakt* case addresses an issue separate and distinct from the "exclusive vs. permissive" question regarding the nature of venue. Moreover, as to the *Commonwealth Edison* case, the Sixth Circuit gave unwarranted significance to a footnote that was not the holding of the case. As the Seventh Circuit has recently noted:

> footnote 16 is not the result of any analysis in the opinion, nor is it essential to the resolution of the issues raised in the case. It is dicta. Therefore, *Commonwealth Edison* is not precedential on this issue....

*In re VMS Securities Litigation*, 21 F.3d 139, 143 (7th Cir.1994). In light of this recent clarification, the Sixth Circuit's reliance on footnote 16 in *Commonwealth Edison* is clearly unjustified.

Accordingly, after reviewing the relevant caselaw, this Court finds that there is nothing within the Ninth Circuit or Sixth Circuit precedent, nor any analysis within the other restrictive venue cases, that would justify a change in this Court's ruling.

## V. CONCLUSION

■ As discussed above, a proper analysis of Section 10 of the FAA commands a broad

construction of the venue to effectuate the intention of Congress. When interpreting the law, it is the idea behind the rule that counts. Consequently, this Court properly concluded in its prior order of transfer that the Eastern District of Louisiana is a district where this case might have been brought.

 Lastly, the Court notes that the Defendant has continued to file pleadings with this Court, and the Plaintiff, by necessity, has responded in kind. In this regard, the Court reminds the parties that a court renounces its jurisdiction over a case the moment the court completes transfer under 1404(a). Even though this Court based its prior transfer order upon the interests of justice rather than any initial lack of jurisdiction, the previous jurisdiction of this Court has long since vanished. As the Eleventh Circuit observed:

> When the files in a case are physically transferred to the transferee district, the transferor court loses all jurisdiction of the case.

*Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 988 (11th Cir.1982). In this case, the Clerk of the Court properly transferred the files pursuant to an order of this Court dated June 29, 1994. Consequently, this Court no longer retains the power to "retrieve" the case or to rule upon any motions, and the parties are advised to direct their attention to the Eastern District of Louisiana.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. That the Motion To Reconsider Order Transferring Action To The United States District Court For The Eastern District Of Louisiana (DE 11), be and the same is hereby DISMISSED for the lack of jurisdiction of this Court to consider same;

2. That the Clerk of Court of the United States District Court, Southern District of Florida, be and the same is hereby directed to forward this Order and all post-transfer pleadings filed herein by the parties to the United States District Court for the Eastern District of Louisiana; and

3. To the extent not otherwise disposed of herein, all pending motions are hereby **DISMISSED** for the lack of jurisdiction of this Court to consider same.

**DONE AND ORDERED.**