SAMUEL H. MAYS, JR., District Judge,
dissenting.
Dealer Computer Services, Inc. (“DCS”) appeals from the district court’s dismissal of its Motion to Confirm the arbitrators’ award finding that Dub Herring Ford and the proposed class of automobile dealers whom it represents (collectively, the “Dealers”) should not be allowed to go forward with their arbitration as a class arbitration. The district court found that DCS’ action was not ripe, basing its conclusion on a prior published opinion of this court in this case. See Dealer Computer Servs., Inc. v. Dub Herring Ford, 547 F.3d 558, 559 (6th Cir.2008) (“DCS I”). Because, following the Supreme Court’s recent decision in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., — U.S. -, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), this court’s prior holding in DCS I is no longer the law of this or any other circuit and DCS has otherwise demonstrated that its Motion to Confirm is ripe, I respectfully dissent.
I.
DCS sells computer software systems to automobile dealerships around the country. These systems allow Dealers to display currently available automobile parts and prices to their customers. The Dealers allege that DCS breached its contracts with them by failing to negotiate an extension of its agreement with Ford Motor Company allowing Dealers to continue to view Ford parts and their prices on DCS’ system. Dealers filed a series of arbitration actions against DCS and sought to proceed as a class arbitration. The arbitrators ruled initially that the arbitration agreement found in all of DCS’ form contracts with Dealers permitted the arbitrators to hear a class arbitration. DCS sued in federal district court to vacate the arbitrators’ decision as exceeding their powers under the arbitration agreement and as in “manifest disregard of the law.” DCS I, 547 F.3d at 560. The district court declined to vacate the arbitrators’ decision, and DCS appealed to this court. In a published opinion, a panel of this court vacated the district court’s judgment and remanded with instructions to dismiss *360 DCS’ suit on the ground that it was unripe, depriving the federal courts of jurisdiction. Id. at 564.
When the case returned, the arbitrators held, in a “Partial Final Class Determination Award,” that the Dealers could not proceed with their claims as a class. DCS then returned to federal district court, seeking to confirm the arbitrators’ class determination. See 9 U.S.C. § 9 (providing that federal district courts may enter orders confirming arbitration awards). The district court, following the ripeness analysis employed by this court in the parties’ prior appeal, dismissed DCS’ Motion as unripe. See Dealer Computer Servs., Inc. v. Dub Herring Ford Lincoln Mercury, Inc., No. 07-10263, 2009 WL 1508210, at *3, 2009 U.S. Dist. LEXIS 45325, at *9 (E.D.Mich. May 29, 2009). DCS timely appealed.
II.
A.
In Stolt-Nielsen, a corporation that regularly ships liquids via tanker vessels commenced an arbitration proceeding against Stolt-Nielsen, alleging that StollANielsen had conspired to violate the antitrust laws through price fixing. 130 S.Ct. at 1764-65. The corporation sought class arbitration status, and both parties agreed that their contract was silent about whether they had agreed to allow class claims in arbitration. Id. at 1765-66. The arbitrators, after hearing evidence, determined that a silent contract allows class arbitration. Id. at 1766. StolWNTielsen filed a motion in the district court seeking to vacate the arbitrators’ construction of the arbitration agreement as 1) beyond their power and 2) in manifest disregard of the law. Id.; see also 9 U.S.C. § 10(a)(4) (allowing a court to vacate an award if the arbitrators “exceeded their powers”). The Supreme Court held that, absent a contractual basis, arbitrators may not hear class claims. Stolt-Nielsen, 130 S.Ct. at 1775. Where an agreement is silent, the arbitrators lack the power to hear a class arbitration. Id.
Importantly for this case, the Court also responded to the dissent’s primary argument that Stolt-Nielsen’s Motion to Vacate was premature because it was unripe. See id. at 1777 (Ginsburg, J., dissenting). The majority held that the claim was ripe because, if Stolt-Nielsen could not presently seek review, it “must now submit to class determination proceedings before arbitrators who ... have no authority to require class arbitration.” Id. at 1767 n.2 (majority opinion). The Court also viewed it as certain that, had Stolt-Nielsen refused to abide by the arbitrators’ decision, it would be subject to a motion to compel under 9 U.S.C. § 4 to force it to arbitrate the class claims. Id. Responding to the dissent’s argument that the Court would allow parties to challenge merely procedural decisions by arbitrators, the majority reasoned that a shift from bilateral arbitration to class arbitration wrought “fundamental changes.” Id. at 1776. Under the rules of the American Arbitration Association, participants in class arbitrations no longer enjoy “the presumption of privacy and confidentiality” that applies to bilateral arbitrations. Id. at 1776 (citing AAA Class Rule 9(a)). Class arbitrations “no longer resolve[ ] a single dispute between the parties to a single agreement, but instead resolvef ] many disputes between hundreds or perhaps even thousands of parties.” Id. Thus, parties must have the ability to seek court review of arbitrators’ construction of a class clause in an arbitration agreement. Id.
StolL-Nielsen arrived at the Supreme Court in the same procedural posture as DCS in its prior appeal to this court. As in Stolt-Nielsen, DCS had filed a Motion *361 to Vacate under § 10(a)(4) of the Federal Arbitration Act (“FAA”), alleging that the arbitrators’ determination that the arbitration agreement allowed for class arbitrations exceeded their power and was in “manifest disregard of the law.” [1] Compare id. at 1766, with DCS I, 547 F.3d at 559. Similarly, a primary disagreement between the parties was whether the controversy was ripe. Compare Stolt-Nielsen, 130 S.Ct. at 1767 n. 2 (concluding that a suit challenging the construction of a class arbitration clause was ripe), with DCS I, 547 F.3d at 564 (concluding that a suit challenging construction of a class arbitration clause was not ripe). Although one may attempt to distinguish Stolt-Nielsen by asserting that DCS faced a different hardship in its prior appeal, a hardship that was less compelling, that argument fails because DCS faced the same possibility as Stolt-Nielsen: a motion to compel arbitration if it refused to abide by the arbitrators’ award. Cf. Stolt-Nielsen, 130 S.Ct. at 1767 n. 2. Indeed, the StoltNielsen dissenters explicitly acknowledged that the majority had abrogated this court’s prior decision in this ease. See id. at 1779 (Ginsburg, J., dissenting) (citing this court’s prior holding in DCS I, 547 F.3d at 559, to demonstrate that the majority’s holding changed the law by affirming the federal courts’ “[rjeceptivity to review ... preliminary rulings rendered by arbitrators”). Because the facts and procedural posture of DCS I are materially indistinguishable from those in Stolt-Nielsen, the Supreme Court’s recent decision abrogates this court’s prior holding. Therefore, that holding cannot support the proposition that DCS’ current Motion is unripe; and citation to it for support is error.
B.
Without the support of this court’s prior holding, it is difficult to argue that a procedurally later development is unripe for consideration when the Supreme Court has held that an earlier procedural ruling is ripe for confirmation or vacatur. The arbitrators’ decision rejecting class arbitration disposes of “a separate, discrete, independent, severable issue.” See Island Creek Coal Sales Co. v. City of Gainesville, 729 F.2d 1046, 1049 (6th Cir.1984) (citation omitted). That is the standard this court has long applied for entertaining motions to confirm interim arbitral decisions. Id. The Dealers argue that a decision rejecting class arbitration is merely procedural and has no impact on the substantive rights or merits of any claim. Their argument echoes the objections of the StolCNielsen dissenters, who argued that the Supreme Court’s holding that a decision at an even earlier stage of class proceedings “was abstract and highly interlocutory.” Stolt-Nielsen, 130 S.Ct. at 1778 (Ginsburg, J., dissenting). The Supreme Court majority rejected that analysis, noting that the “fundamental changes” effected by class arbitration status were enough to require federal court review when the issue of whether the arbitrators had the power to decide a class arbitration was in dispute.[2] Id. at 1776 (majority opinion).
*362 The concerns identified by the Supreme Court in Stolt-Nielsen apply all the more to this case in its current, later procedural posture. First, the close of class certification proceedings is such a “fundamental change” in the life-span of a lawsuit that the Federal Rules of Civil Procedure expressly grant courts of appeal the authority to hear appeals from district courts’ orders granting or denying certification. See Fed.R.Civ.P. 23(f). This acknowledges that the grant or denial of class certification often has the effect of a final ruling on the merits. If a court denies certification, plaintiffs will often drop their claims; if a court grants it, the defendants may settle. See Fed.R.Civ.P. 23, Notes of the Advisory Comm, on 1998 Amends. Class decisions in arbitration are no different. The StoltNielsen dissenters refused to extend their conclusion that a motion contesting the ability of the arbitrators to decide class certification was unripe to motions filed after the arbitrators had issued a final ruling on class certification. See 130 S.Ct. at 1778 & n. 4 (Ginsburg, J., dissenting) (citing Rule 23(f) and distinguishing StoltNielsen ’s procedural posture from that of a party contesting arbitrators’ final ruling on whether to certify a class). The dissenters thereby suggested that even they, when faced with the situation now before this court, would entertain a motion to confirm or vacate.[3]
Second, the concession that a motion to vacate the present award by the Dealers would be ripe effectively concedes that this court has jurisdiction over the present Motion. The provisions of the FAA are not severable. See 9 U.S.C. §§ 9-10 (statutory provisions conferring authority on the federal courts to confirm or vacate an arbitral award). Had the Supreme Court refused to vacate the arbitrators’ decision in Stolt-Nielsen, that refusal would have had the same effect as confirming it. The language of the FAA makes this clear. A federal court “must grant [an order confirming an arbitral award] unless the award is vacated, modified, or corrected.” 9 U.S.C. § 9 (emphasis added). Where there is jurisdiction to vacate an award, there is of necessity jurisdiction to confirm it. No authority — other than argument by analogy to this court’s prior, abrogated decision — supports severing the FAA’s remedies. The Dealers concede that, if this court concludes a motion to vacate by them would be ripe, DCS’ current Motion to Confirm must also be ripe. Audio recording: Oral Argument at 21:30-22:11 (Aug. 4, 2010) (on file with the clerk of the court) [hereinafter “Oral Argument”].
The potential for an aggrieved party to vacate the award explains why failure to confirm would harm DCS. See 9 U.S.C. § 9 (noting that the only two requirements *363 for confirmation are 1) an agreement “that a judgment of the court shall be entered upon the award” and 2) an award); cf. Stolt-Nielsen, 130 S.Ct. at 1767 n. 2 (holding that the ability of the respondent to file a motion to compel Stolt-Nielsen to abide by the arbitrators’ decision that they could hear class claims constituted the harm necessary to make the motion to vacate ripe). If there were any doubt about ripeness, the Dealers removed it at oral argument when they confirmed that, if this court refuses to confirm the arbitrators’ decision prohibiting the Dealers’ claims from moving forward as a class, the Dealers will relitigate those claims on remand. Oral Argument at 17:05-:44. The harm is thus concrete and particularized, not potential or theoretical. See Warshak, 532 F.3d at 525 (requiring that a claim arise from “a concrete factual context and concern[ ] a dispute that is likely to come to pass” for a court to find ripeness). It is also the harm confirmation is meant to address — that of endless relitigation of the same claims. Parties to an arbitration proceeding are entitled to finality just as any party to court-based litigation is. That is why Congress gave the federal courts the ability to confirm arbitral awards; an unconfirmed award lacks finality. See 9 U.S.C. § 9; Island Creek Coal Sales, 729 F.2d at 1049 (confirming an interim arbitral award on a contract issue that, like the present dispute about class arbitration status, was “self-contained”). Victorious parties in arbitration may invoke the jurisdiction of the federal courts. To suggest otherwise would threaten the arbitral process.
Third, the Dealers appear to base much of their argument on the idea that allowing piecemeal adjudication would serve to undermine the “national policy favoring arbitration.” Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 588, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). The Supreme Court undoubtedly had this policy preference in mind when considering its decision in Stolt-Nielsen. Nonetheless, the Court considered the change class status effects so “fundamental” as to require the possibility of federal court intervention through vacatur or confirmation. 130 S.Ct. at 1776. A public-policy principle cannot revive an abrogated case or overrule guidance from the Supreme Court. Moreover, principles of public policy are for elected legislators to balance. Congress has spoken on this policy: federal courts may confirm arbitral awards. 9 U.S.C. § 9.
III.
This court denied DCS a decision on its prior Motion to Vacate. See DCS I, 547 F.3d at 564, abrogated by Stolt-Nielsen, 130 S.Ct. at 1767 n. 2; see also Stolt-Nielsen, 130 S.Ct. at 1779 (Ginsburg, J., dissenting) (noting that the Supreme Court majority abrogated DCS 7).It is entitled to an order of confirmation now that the arbitrators have made their decision about whether class proceedings are appropriate. Because the court concludes otherwise, I respectfully dissent.

. Both challenged awards were termed “Partial Final” awards. See Stolt-Nielsen, 130 S.Ct. at 1779 (Ginsburg, J., dissenting); Dealer Computer Servs. v. Dub Herring Ford, 489 F.Supp.2d 772, 777 (E.D.Mich.2007), vacated by 547 F.3d at 559. Both cases addressed arbitrations under the rules of the American Arbitration Association. See Stolt-Nielsen, 130 S.Ct. at 1776; DCS I, 547 F.3d at 563.

. Nor would it be correct to characterize the Supreme Court's holding that it had jurisdiction as summary or dismissive. “[Fjederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue sua sponte.” Answers *362 in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd., 556 F.3d 459, 465 (6th Cir.2009) (citations omitted). Ripeness is a constitutional prerequisite to a court’s proper exercise of its jurisdiction. Warshak v. United States, 532 F.3d 521, 525 (6th Cir.2008) (en banc). That the Supreme Court included its conclusion that Stolt-Nielsen’s Motion to Vacate was ripe in a footnote is not material. See Stolt-Nielsen, 130 S.Ct. at 1767 n. 2. That holding was a vital part of the Court's opinion because, absent its finding of jurisdiction, all that came after would have been an unconstitutional advisory opinion. See U.S. Const, art. Ill, § 2, cl. 1 (limiting the jurisdiction of the federal courts to "Cases” and “Controversies”).

. To the extent that one can find any "discretion” in a court's jurisdiction, this court should exercise it in favor of DCS because this court denied DCS a hearing on the merits about the validity of the class arbitration clause. Compare Stolt-Nielsen, 130 S.Ct. at 1767 n. 2 (holding that motion to vacate the arbitrators' decision that the arbitration clause allowed for class arbitration was ripe), with DCS I, 547 F.3d at 564 (concluding that such a claim was not ripe).