NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0313n.06
Filed: April 30, 2009

No. 08-2629

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Quixtar, Inc. | ) | ON APPEAL FROM THE UNITED STATES |
| Petitioner-Appellee | ) | DISTRICT COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| | ) | |
| Chris Brady, et al. | ) | |
| Respondents-Appellants | ) | |

BEFORE:     MOORE, McKEAGUE, Circuit Judges; and FORESTER, District Judge[1]

**Forester, District Judge.**     Appellants Chris Brady, et al. (collectively "Respondents")
appeal from an order compelling arbitration, claiming that the District Court should have given
collateral estoppel effect to the decision in Morrison v. Amway, 517 F.3d 248 (5th Cir. 2008), which
held that the same or a very similar arbitration agreement was unenforceable, or should at least
have considered their challenges to the enforceability of the agreement before ordering arbitration.
Appellee Quixtar, Inc. ("Quixtar") claims the issue on appeal is whether the Respondents waived
the right for a court determination of arbitrability by submitting that issue to the arbitrator and are
now attempting an interlocutory appeal of the arbitrator's decision that the agreement is valid. For
the reasons stated below, we AFFIRM the decision of the district court.

## I. BACKGROUND

Quixtar (formerly Amway) sells health and beauty products through distributors known as
Independent Business Owners ("IBOs") who develop a "Line of Sponsorship" by recruiting and

---

[1] The Honorable Karl S. Forester, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

supporting additional IBOs. One of the largest lines of sponsorship was led by Appellants Woodward and Brady; the sales of that line accounted for more than 10 percent of Quixtar's North American business. [Quixtar Brief, p. 5].[2] Disagreements arose among a number of IBOs and Quixtar, with the result that lawsuits were filed across the United States. Quixtar's spreadsheet reveals at least twenty-five lawsuits initiated by various IBOs, and at least ten actions initiated by Quixtar. [Quixtar Brief, Exhibit B, pp. 99-100].

Beginning in 1997, Quixtar's registration form for IBOs and its Rules of Conduct contained an agreement to arbitrate. The parties do not dispute that the Respondents either signed registration forms each year thereafter or authorized automatic renewal of their registration.

In 2007, disputes arose between Woodward and Brady and Quixtar. Quixtar terminated the Woodward and Brady IBOs on August 9, 2007. [Brady Brief, p. 10]. That same day, Woodward and others initiated a class action lawsuit in federal court in the Central District of California (Woodward v. Quixtar, No. 07-5194), claiming Quixtar operated a pyramid scheme and that the non-compete, non-solicitation, non-disclosure, and arbitration agreements with the IBOs were unenforceable. Brady Brief p. 10; Quixtar Brief pp. 9, 28; District Court Slip Opinion[3] ("Opinion") p. 4. The next day, August 10, 2007, Quixtar initiated an arbitration proceeding in Michigan against several of the Respondents and soon added the remaining Respondents (the "JAMS Arbitration"). Brady Brief p. 10; Quixtar Brief pp. 16.29; Opinion p. 4.

Also on August 10, Quixtar sought injunctive relief in aid of arbitration in Michigan's Kent County state court, requesting Respondents be precluded from interfering with Quixtar's business, from disparaging Quixtar and from soliciting IBOs. Brady Brief p. 10; Quixtar Brief pp. 10, 29. On August 13, 2007, Respondents moved the California District Court to enjoin enforcement of the

---

[2] The parties' briefs are referenced as follows: Appellants' Brief ("Brady Brief"); Appellee's Brief ("Quixtar Brief"); Appellants' Reply ("Brady Reply").

[3] Also available at Quixtar, Inc. v. Brady, 2008 WL 5386774 (E. D. Mich. 2008).

arbitration, non-compete and non-solicitation agreements. Brady Brief p. 10; Quixtar Brief p. 11. On August 17, 2007, Quixtar moved that same court to compel arbitration and to dismiss on abstention grounds. Brady Brief p. 11. Respondents also requested that JAMS stay selection of an arbitrator until the California litigation was resolved. Brady Brief p. 11.

On August 28, 2007, the Michigan state court granted Quixtar's request and issued a preliminary injunction against the Respondents and all acting in concert with them. Quixtar Brief p. 10. The California District Court subsequently dismissed its action on abstention grounds and denied all motions as moot. Brady Brief p. 11; Opinion p. 5.

Following dismissal of the California lawsuit, the JAMS Arbitration proceeded. Opinion p. 5. On October 18, 2007, Respondents filed counterclaims in the arbitration alleging the agreements were unenforceable. Quixtar Brief p. 29. According to Quixtar, counsel for the Respondents said during a telephone conference that they would not challenge the arbitrator's jurisdiction in court, and they requested expedited arbitration. Quixtar Brief pp. 12-13; Opinion pp. 5-6. Quixtar confirmed this discussion in a letter to the arbitrator on October 29, 2007. Id. Respondents' counsel filed an affidavit below disagreeing with Quixtar's representations and arguing there was no waiver of Respondents' objections to the arbitration. Opinion, p. 6, n. 6.

On February 6, 2008, the Fifth Circuit affirmed a decision from similar litigation that the arbitration agreements were illusory and unenforceable under Texas law. Morrison v. Amway Corp. 517 F.3d 248 (5th Cir. 2008). On March 31, 2008, another court held the Quixtar arbitration agreement was "permeated with unconscionable provisions" and unenforceable under California law. Pokorny v. Quixtar, Inc., 2008 WL 850358 (N.D. Cal. 2008).

In February 2008, the Respondents moved to dismiss the JAMS Arbitration, challenging the enforceability of the arbitration provision and various other claims. Opinion p. 6. The Arbitrator held a three-day hearing on this and other motions in March, and issued an order April 1, 2008 denying the motion to dismiss. Id. The Respondents moved for reconsideration based on

3

Pokorny, but that motion was denied. Quixtar Brief p. 15. An appeal to the general counsel of JAMS was also denied. Opinion p. 6.

On July 23, 2008, following final denial of their motion to dismiss in the JAMS Arbitration, some of the Respondents filed suit in a Georgia state court, seeking a declaration that Quixtar's Rules of Conduct, including the arbitration provision, were unenforceable and requesting the JAMS Arbitration be enjoined. Quixtar Brief p. 16; Opinion p. 7. On August 19, 2008, the Georgia court enjoined enforcement of the Rules pending a hearing. Brady Brief p. 16, Quixtar Brief, p. 17; Opinion p. 7. Quixtar and the Arbitrator took the position that this order applied only to those Respondents who were also plaintiffs in the Georgia litigation. Opinion p. 8. Respondents sought to extend it to all Respondents involved in the Arbitration. The Georgia court extended the duration of the order as to the Georgia plaintiffs, but did not rule on other matters.

On October 14, 2008, Quixtar brought two actions (one against the Respondents who were Georgia plaintiffs, the other against Respondents who were not Georgia plaintiffs) in the Eastern District of Michigan to compel resumption of the JAMS Arbitration and to enjoin the Respondents from further participation in the Georgia litigation. Following a hearing on November 25, 2008, the District Court addressed the issues in an Opinion dated December 17, 2008.

The District Court first considered the preclusive effect of Morrison and concluded that there was no "precise identity of legal issues" because Morrison was decided under Texas law, whereas Michigan law applied to the contract enforceability issues here. Opinion pp. 10-14. Accordingly, the court held the doctrine of issue preclusion was inapplicable. Id. at 14. Because there was no identity of legal issues, the court did not consider Quixtar's claim that material factual distinctions also precluded collateral estoppel. Id. at 14, n. 16. Next, the court considered abstention under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), and concluded that the applicable factors weighed against abstention. Id. at 14-21.

4

With respect to Quixtar's Petitions to Compel Arbitration, the court declined at this stage to decide whether Respondents waived the opportunity for a court determination of arbitrability by presenting the issue to the Arbitrator. Id. at 30. It held this issue need not be decided until a court is asked to review the arbitrator's rulings following the conclusion of the JAMS Arbitration. Id. The court further concluded it would be inappropriate to consider the arbitrator's decision on arbitrability until the conclusion of the JAMS Arbitration. Id. at 31-33. Finally, the court declined to issue any injunction regarding the Georgia state court action, but advised the parties they could return if additional relief became necessary in support of the arbitration. The relief granted was "limited to an order directing Respondents to return to the JAMS Arbitration." Id. at 36. It is from this Opinion that the Respondents appeal.

## II. ANALYSIS

### A. Subject-Matter Jurisdiction

Quixtar first argues that this Court lacks jurisdiction to review the District Court's order compelling arbitration. This argument appears to be based on the District Court's determination that, by challenging the enforceability of the arbitration provision before the District Court, Respondents effectively sought interlocutory review of the arbitration proceedings. As the District Court noted, courts generally should not entertain interlocutory appeals from ongoing arbitration proceedings. *See, e.g.*, *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) ("[A] district court should not hold itself open as an appellate tribunal during an ongoing arbitration proceeding, since applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and . . . delaying tactics in a proceeding that is supposed to produce a speedy decision." (internal quotation marks omitted)).

Whatever the practical effect of Respondents' challenges to arbitrability, however, it is clear that the district court had subject-matter jurisdiction over Quixtar's actions and that this court has appellate jurisdiction to review the district court's decision. Quixtar filed actions against

5

Respondents to compel arbitration pursuant to 9 U.S.C. § 4 and to enjoin the state-court proceedings in Georgia, with subject-matter jurisdiction premised on diversity of citizenship. Appellate jurisdiction over district court rulings concerning arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16. Section 16 provides in relevant part that "[a]n appeal may be taken from . . . a final decision with respect to an arbitration that is subject to this title," 9 U.S.C. § 16(a)(3), but, subject to exceptions that are not relevant here, "an appeal may not be taken from an interlocutory order . . . directing arbitration to proceed under section 4 of this title," 9 U.S.C. § 16(b)(3). "'Section 16(a)(3) . . . preserves immediate appeal of any final decision with respect to an arbitration, regardless of whether the decision is favorable or hostile to arbitration.'" *Great Earth Cos. v. Simons*, 288 F.3d 878, 885 (6th Cir. 2002) (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 76, 86 (2000)). "Thus, we have appellate jurisdiction over a decision with respect to arbitration if it 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Id.* (quoting *Green Tree Fin. Corp.*, 531 U.S. at 86).

Here, the District Court issued an order that (1) compelled Respondents to resume the JAMS Arbitration, (2) denied as moot Quixtar's motions to enjoin the state-court proceedings in Georgia, (3) denied Respondents' motion to dismiss or for summary judgment, and (4) denied as moot Respondents' motions to compel discovery and to file supplemental authority. The district court's order "'plainly disposed of the entire case on the merits and left no part of it pending before the court.'" *Id.* (quoting *Green Tree Fin. Corp.*, 531 U.S. at 86). Because the district court's order was a final decision that disposed of the entire case that was before the district court, we have jurisdiction to hear this appeal pursuant to 9 U.S.C. § 16(a)(3).

**B.      Challenges to the Enforceability of the Arbitration Agreement.**

"This Court reviews de novo a district court's ruling on whether to compel arbitration pursuant to the FAA." Burden v. Check into Cash of Kentucky, LLC, 267 F.3d 483, 487 (6th Cir. 2001). See also Great Earth, 288 F.3d at 888 ("We review the ruling of the district court compelling

arbitration de novo."). Respondents rely on Burden to argue that allegations regarding the validity of the arbitration agreement "should ordinarily be decided in the trial court before final resolution of a motion to compel arbitration." Burden, 267 F.3d at 493. While this general proposition is "ordinarily" true, the district court found that Respondents abandoned their opportunity for an initial court determination on the validity of the arbitration agreement by failing to pursue their claims following dismissal of the California action and by not pursuing an initial court determination prior to the adverse decision of the arbitrator. Opinion p. 29.

Quixtar insisted below and again on appeal that Respondents "waived" any right to a court determination on arbitrability by submitting the question to the arbitrator. Quixtar Brief pp. 34-36. The District Court analyzed the decisions in Cleveland Electric Illuminating Co. v. Utility Workers Union of America, 440 F.3d 809 (6th Cir. 2006) and First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995) and found legal support for both waiver and non-waiver under the facts before the court. More importantly, it noted that the analysis of waiver in Cleveland Electric and First Options was for the purpose of determining what standard of review should be applied to the arbitrator's decision on arbitrability. Opinion p. 29. The court continued:

> Because the issue of waiver is not yet ripe for decision, nothing in this opinion should be read as this Court's final word on the subject. In particular, the Court need not (and does not) decide what issues have been preserved for judicial review at the conclusion of the JAMS Arbitration, nor what standards should govern any such review.

Opinion pp. 30-31, n.21. Because the District Court declined to make any determination on the issue of waiver, there is no decision for this Court to review. Perez v. Aetna Life Ins. Co., 150 F.3d 550, 554 (6th Cir. 1998) ("Typically, we will not address issues unless ruled upon by the trial court below."). Additionally, as Respondents note, Quixtar did not cross appeal to seek review of this issue. Brady Reply p. 14. "[T]he filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary." Francis v. Clark Equipment Co., 993 F.2d 545, 552 (6th Cir. 1993).

7

Quixtar petitioned the district court to compel arbitration pursuant to 9 U.S.C. § 4, which provides in part:

> A party aggrieved by the ... refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4. In the present case, there was no dispute that an agreement in writing was made for arbitration and that Respondents were in default. Moreover, the District Court found, and we agree, that Respondents "abandoned their efforts to secure a judicial determination of arbitrability and submitted this issue to the arbitrator" and thereby implicitly agreed to defer judicial review until after the conclusion of the JAMS Arbitration. Opinion p. 33. Under these circumstances, the District Court correctly ordered the parties to proceed with the arbitration.

We agree with the District Court that Respondents are effectively seeking interlocutory review of the arbitrator's decision that the arbitration provision is enforceable. However, we believe that the District Court should have taken this reasoning one step further. The District Court's conclusion that courts should decline interlocutory review of ongoing arbitration proceedings applies with equal force to Respondents' collateral-estoppel attack on arbitrability. In the instant case, collateral estoppel is simply another defense raised by Respondents to the enforceability of the arbitration provision. Like Respondents' substantive arguments for non-enforceability, this issue may be raised in the arbitration proceedings and may be reviewed by a court *after* the JAMS Arbitration has reached its conclusion. We believe, therefore, that the District Court erred in reaching the merits of collateral estoppel and should instead have disposed of this issue—as it did the others—on the ground that Respondents sought de facto interlocutory review.[4] Accordingly,

---

[4]We note that the district court erred in stating that merely because the court in Morrison v. Amway Corp., 517 F.3d 248 (5th Cir. 2008), applied a different jurisdiction's substantive law (that of Texas instead of Michigan), it necessarily did not decide the precise issue presented in

8

we affirm the district court's denial of Respondents' motion to dismiss or for summary judgment on the alternate ground that Respondents are effectively asking for interlocutory review of the arbitration proceedings. Although there may be questions of waiver, Respondents will have the opportunity to raise collateral estoppel and other arbitrability arguments in a separate action at the conclusion of the arbitration proceedings, as well as during the arbitration proceedings.

For the foregoing reasons, we **AFFIRM** the District Court's decision to compel arbitration.

---

the instant litigation. See 18 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4417, at 461-62 (2d ed. 2002) ("[T]he laws of different states may give different meanings to the same legal terms, just as happens with federal and state law. At the same time, careful examination of the controlling legal principles may show that the standards are the same, or that the fact findings have the same effect under either standard, so that the same issue is presented by both systems of law." (footnote omitted)); see id. § 4417, at 462 n.65 (collecting cases).