RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DEALER COMPUTER SERVICES, INC.,
                         *Plaintiff-Appellant,*

      *v.*

DUB HERRING FORD, and 63 car dealerships
located across the country,
                      *Defendants-Appellees.*

No. 09-1848

>

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-10263—Nancy G. Edmunds, District Judge.

Argued:  August 4, 2010

Decided and Filed:  October 14, 2010

Before:  COLE and McKEAGUE, Circuit Judges; MAYS, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  John C. Allen, JOHN C. ALLEN, P.C., Houston, Texas, for Appellant.
Richard D. Faulkner, BLUME & FAULKNER, P.L.L.C., Richardson, Texas, for
Appellees.  **ON BRIEF:**  John C. Allen, JOHN C. ALLEN, P.C., Houston, Texas, for
Appellant. Richard D. Faulkner, BLUME & FAULKNER, P.L.L.C., Richardson, Texas,
for Appellees.

     McKEAGUE, J., delivered the opinion of the court, in which COLE, J., joined.
MAYS, D. J. (pp. 17–23), delivered a separate dissenting opinion.

---

    [*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District of
Tennessee, sitting by designation.

1

---

**OPINION**

---

McKEAGUE, Circuit Judge.   This case poses the question whether a district court has jurisdiction to confirm an arbitration panel's interim award denying class arbitration.   The district court, following guidance provided by this court in a closely related earlier ruling in the same case, determined that the requisite ripeness is lacking and dismissed the motion to confirm for lack of jurisdiction.   Because we agree that appellant has failed to demonstrate that it is subject to cognizable hardship if immediate judicial review of the interim award is denied, we affirm.

## I.  BACKGROUND

Plaintiff-appellant Dealer Computer Services, Inc. ("DCS") provides computer hardware and software support to automobile dealers.   It developed an electronic parts catalog system known as a Computerized Publication Display ("CPD") that enabled car dealers to display then current automobile parts, prices, descriptive data and parts visualizations.   Defendant-appellee Dub Herring Ford, a Mississippi corporation, and sixty-three other originally named Ford dealers are a group of dealerships that were parties to written contracts with DCS for the provision of CPD systems and services.   They are also putative class representatives of a class of some 2,470 similarly situated Ford dealerships across the country allegedly aggrieved by DCS's breaches of the CPD contracts.   All of the CPD contracts contained an arbitration provision requiring that any contract-related controversy be submitted to arbitration under the Commercial Arbitration Rules of the American Arbitration Association.   Dub Herring Ford, on behalf of the dealers, commenced the arbitration proceedings and sought arbitration as a class action.

In November 2006, the arbitration panel issued its Clause Construction Award, concluding that the applicable CPD contracts permit the present arbitration to proceed as a class arbitration.   DCS moved the district court to vacate the clause construction

award. The district court denied the motion on May 29, 2007. R. 23, Order; *Dealer Computer Services, Inc. v. Dub Herring Ford*, 489 F.Supp.2d 772 (E.D. Mich. 2007). The district court concluded that it had jurisdiction to review the award even though it was not a final arbitration award, but denied the motion to vacate the award, concluding that the arbitration panel did not exceed its powers or manifestly disregard the applicable law. On appeal, we vacated the district court's order, holding that DCS's motion to vacate was not ripe for judicial review and that the district court therefore lacked jurisdiction. *Dealer Computer Services, Inc. v. Dub Herring Ford*, 547 F.3d 558 (6th Cir. 2008) ("*DCS - I*").

Next, in proceedings conducted from August to October 2008, the arbitration panel considered evidence and arguments regarding class certification. In December 2008, the arbitration panel issued its 37-page Partial Final Class Determination Award, denying class certification. DCS moved the district court to re-open the case and confirm the class determination award. Taking its lead from our earlier opinion on DCS's motion to vacate the interim clause construction award, the district court applied the prescribed three-factor ripeness test. The court determined that the arbitration panel's denial of class certification did not pose a likelihood of harm to DCS and that denial of immediate judicial review of the interlocutory award would pose no hardship to DCS. R. 43, Order; *Dealer Computer Services, Inc. v. Dub Herring Ford*, 2009 WL 1508210 (E.D. Mich., May 29, 2009) (unpublished). The district court therefore concluded that the matter was still not ripe and dismissed DCS's motion to confirm. In its appeal from this ruling, DCS argues that the district court misconstrued our earlier ruling, applied the wrong standard in assessing ripeness, and misapplied the standard that it did apply.

## II.  APPELLATE JURISDICTION

Although Dub Herring Ford has not moved to dismiss the appeal for lack of appellate jurisdiction, it has questioned DCS's asserted reliance on the collateral order exception to the final judgment rule of 28 U.S.C. § 1291 as a basis for this court's appellate jurisdiction. Indeed, the district court's dismissal order, essentially refusing to finally determine the propriety of the arbitration panel's class determination award, does

not appear to meet the requirements of the collateral order exception. *See In re Dow Corning Corp.*, 86 F.3d 482, 488 (6th Cir. 1996) (recognizing that an interlocutory order may be immediately reviewable under the collateral order exception if it: "(1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from the final judgment.").

In response, however, DCS has correctly noted that appeal is properly taken under 9 U.S.C. § 16(a)(1)(D), expressly allowing appeals from orders confirming or denying confirmation of arbitration awards and partial awards. *See Bull HN Information Systems, Inc. v. Hutson*, 229 F.3d 321, 327-28 (1st Cir. 2000) (applying § 16(a)(1)(D) as permitting appeal from an order denying confirmation of an interim partial award). The district court's order dismissing DCS's motion to confirm the arbitration panel's class determination award is in effect an order denying confirmation of a partial award, appealable under § 16(a)(1)(D). Accordingly, we have jurisdiction to hear this appeal.

## III.  ANALYSIS

### A.  Governing Standards

The district court's determination that it lacked jurisdiction for lack of ripeness is subject to *de novo* review. *DCS - I*, 547 F.3d at 560.   In our earlier ruling, we summarized the governing standards as follows:

> The ripeness doctrine "focuses on the timing of the action." . . . "[It] is more than a mere procedural question; it is determinative of jurisdiction.  If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." . . .  Ripeness "draw[s] both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." . . .  Enforcing ripeness requirements discourages "premature adjudication" of legal questions and judicial entanglement in abstract controversies. . . . Thus, the doctrine serves as a bar to judicial review whenever a court determines a claim is filed prematurely.
>
> The key factors to consider when assessing the ripeness of a dispute are:  (1) the likelihood that the harm alleged by a party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at

> this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits.

*Id.* at 560-61 (citations omitted). *See also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, — U.S. —, 130 S.Ct. 1758, 1767 n.2 (2010) ("In evaluating a claim to determine whether it is ripe for judicial review, we consider both 'the fitness of the issues for judicial decision' and 'the hardship of withholding court consideration.'" (citation omitted)).

The ripeness inquiry is triggered by the fact that the instant interlocutory arbitration award, like the one at issue in our earlier ruling, is not a final arbitration award. A final award deciding the merits of the dealers' breach of contract claims would clearly be subject to confirmation under the Federal Arbitration Act, 9 U.S.C. § 9.[1] But the subject class determination award is clearly not final. In the earlier appeal of the district court's order refusing to vacate the similarly interlocutory arbitration panel's clause construction award, we implicitly accepted that the district court had jurisdiction to consider DCS's motion to vacate the award under 9 U.S.C. § 10—*if* it satisfied ripeness requirements. *See also Stolt-Nielsen*, 130 S.Ct. at 1766 (silently accepting that 9 U.S.C. § 10 represents a proper jurisdictional vehicle, assuming ripeness, for a motion to vacate an interlocutory clause construction award). Here too, the instant partial award, denying the dealers' motion for class arbitration proceedings, is clearly interlocutory. It merely resolves the procedural question whether the individual named claimants will be able to arbitrate their claims only on their own behalf or, alternatively,

---

[1]The Federal Arbitration Act itself is not jurisdictional. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). Thus, the availability of confirmation under 9 U.S.C. § 9 is dependent on some other independent jurisdictional basis. *Id.* Here, federal jurisdiction is premised on the Class Action Fairness Act, 28 U.S.C. § 1332(d), prescribing diversity and amount-in-controversy requirements for class actions. Early in the district court proceedings, the district court ordered DCS to show cause why its initial motion to vacate the clause construction award should not be dismissed for lack of jurisdiction. The court was satisfied by the response. R. 8, Order. Since then, DCS's showing that the diversity and amount-in-controversy requirements are met has not been challenged. In their appellate brief, the dealers "question" (without specifically challenging jurisdiction) whether the requirements can be met after the class certification denial is finalized. This subsequent development has no impact on jurisdiction. First of all, the class action certification denial has not yet been finalized. Second, the amount claimed in the pleadings when the action was commenced generally controls (as long as the amount was claimed in good faith) and subsequent events which reduce the amount recoverable below the statutory limit do not divest the court of jurisdiction. *Charvat v. GVN Mich. Inc.,* 561 F.3d 623, 627-28 (6th Cir. 2009). Hence, we have no reason to question the propriety of the district court's fundamental exercise of jurisdiction under the Class Action Fairness Act.

on behalf of a nationwide class. It has no impact on the merits of any claim. It follows that DCS must satisfy the ripeness requirements to obtain federal court relief.

## B. Finality of Class Arbitration Determination

DCS concedes that the class determination award is an interim award, but argues that it is nonetheless subject to judicial review because it resolves a "separate, discrete, independent, severable issue" and therefore has sufficient "finality." *See Island Creek Coal Sales Co. v. City of Gainesville, FL*, 729 F.2d 1046, 1049 (6th Cir. 1984), *abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000). In *Island Creek*, the Sixth Circuit upheld the district court's authority to confirm an interim award that, far from merely deciding a procedural issue, granted injunctive relief to maintain the status quo during the pendency of arbitration proceedings. Specifically, the award "finally and definitively" resolved "a separate independent claim," i.e., the "self-contained issue" whether a party was required to perform under the contract during the pendency of arbitration. *Id.*, 729 F.2d at 1049. In other words, the interim award directly and profoundly affected the parties' substantive rights in their contractual relationship, even though it did not finally dispose of all the claims submitted to arbitration. *Id.*

Here, in contrast, the interim class arbitration determination, albeit a significant procedural step in the arbitration proceedings, has no impact on the parties' substantive rights or the merits of any claim. The denial of class arbitration proceedings arguably disposes of a discrete, independent, severable issue, but it is a procedural issue—hardly the sort of final decision that warrants immediate judicial review in disruption of ongoing arbitration proceedings. *Island Creek* is thus distinguishable.[2]

---

[2]Although ripeness was not expressly addressed in *Island Creek*, if it had been, the three ripeness factors set forth in *Computer Dealer Services*, 547 F.3d at 561, would most assuredly have been deemed satisfied. In other words, even though the term "ripeness" was not expressly used to explain why the interim award was deemed subject to confirmation, it was implicitly considered as a factor. *See also Hall Steel Co. v. Metalloyd Ltd.*, 492 F.Supp.2d 715, 719-20 (E.D. Mich. 2007) (distinguishing *Island Creek* and observing that federal courts generally overcome their usual resistance to piecemeal confirmation of interim awards only where there is some compelling need for immediate relief).

This very distinction is among the reasons why, in litigation (as opposed to arbitration), class certification decisions by the district courts were traditionally *not* deemed to have the requisite finality to warrant immediate appellate review. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469-70 (1978). In 1998, however, Rule 23(f) of the Federal Rules of Civil Procedure was adopted, expressly providing the circuit courts of appeals with *discretion* to permit an appeal from an order granting or denying class certification. This change was designed to allow the circuit courts "to develop standards for granting review that reflect the changing areas of uncertainty in class litigation." Fed. R. Civ. P. 23, Advisory Committee Notes, 1998 Amendments, Subdivision (f). In developing such standards, the Sixth Circuit has eschewed any hard-and-fast test, but has recognized that discretionary review should be "rarely granted," in recognition of "the unfortunately lengthy period necessary to complete an appeal." *In re Delta Air Lines*, 310 F.3d 953, 959-60 (6th Cir. 2002). Further, among those factors identified by the court as potentially relevant to the exercise of discretion is the "death-knell factor," i.e., "recognition that the costs of continuing litigation for either a plaintiff or defendant may present such a barrier that later review is hampered." *Id.* at 960. In other words, to the extent immediate review of a class certification ruling may now be permitted under Rule 23(f), it is not because of the ruling's "finality," but because of "hardship" that may otherwise result to one side or the other.

Hence, insofar as case law applying Rule 23(f) is relevant, by analogy, to assessment of the district court's jurisdiction to confirm the arbitration panel's denial of class arbitration in this case, it does not counsel in favor of a *per se* rule of appealability because the denial is sufficiently "final." Rather, it counsels in favor of requiring consideration of the very sort of ripeness factors that the district court did consider in accordance with our recent direction in *DCS - I*, 547 F.3d at 560-63.

DCS insists the *DCS - I* ruling expressly contemplated the immediate reviewability of the arbitration panel's class arbitration determination. DCS relies on the following language from our opinion:

> The stay procedures set forth in [AAA Commercial Arbitration Supplementary] Rule 5(d) enable a party to contest an **unfavorable** decision on class certification in court *before* commencement of class arbitration and resolution of the merits by the arbitration panel. Thus, **if** the arbitrators in this case ultimately **decide to certify Dealers' class**, which is no certainty, Rule 5(d) would nonetheless provide DCS ample opportunity to obtain judicial review of any arguments it may have against class arbitration, including those challenging the soundness of the arbitration panel's prior Clause Construction Award. Given this prospective opportunity for judicial review, it does not appear DCS will suffer any material hardship if review is withheld at this preliminary stage of arbitration.

*Id.* at 562-63 (bold-emphasis added).

DCS construes this language more broadly than warranted. DCS reads the language as reflecting our determination that the motion to vacate the clause construction award was not ripe because DCS would *necessarily*—i.e., irrespective of outcome—have another opportunity to obtain interlocutory judicial review of the class determination award. As indicated by the highlighted language, however, the contemplated judicial review of the class determination award is clearly contingent on the eventuality of an unfavorable award. Indeed, whether the arbitration panel ultimately decided to certify the class or not, the decision would be interlocutory. An interlocutory award, we made clear, is ripe for judicial review only if the three ripeness factors—i.e., likelihood of harm, hardship, and factual development—are met. In most cases, an unfavorable class certification decision would ordinarily be expected to create circumstances that would justify the aggrieved side, whether claimants or respondent, in seeking and obtaining judicial review under these ripeness factors. Hence, the court's discussion of the hardship posed to DCS is couched in terms of an award unfavorable to DCS. Naturally, the hardship posed to a party by a *favorable* class determination award would not be readily apparent. The cited language does not therefore support the inference urged by DCS that either side would be entitled to judicial review of the interlocutory class determination irrespective of any showing of hardship.

It is because of the importance of the hardship element to the ripeness assessment that this favorable/unfavorable distinction is not merely one of semantics. And it is the

hardship requirement that undermines DCS's argument that because motions to confirm and to vacate are two sides of the same coin, both forms of judicial review should be mutually available. Yes, if Dub Herring Ford and the other dealers had moved the district court to vacate the class determination award under 9 U.S.C. § 10, they may very well have been able to establish the requisite hardship (e.g., in the form of the "death-knell" factor) to justify the exercise of jurisdiction notwithstanding the non-final nature of the award. In that case, yes, the district court would presumably be able to exercise supplemental jurisdiction over "the flip side of the coin," DCS's anticipated reciprocal motion to confirm the award. Yet, because the dealers have not moved to vacate the award, DCS, as the winning party, is handicapped in its efforts to obtain judicial review. Pursuant to *DCS - I*, which has newly been confirmed in material part by the Supreme Court in *Stolt-Nielsen*, DCS must meet the requirements of ripeness to trigger federal court jurisdiction.[3]

This result, requiring either a final award or a sufficiently ripe interlocutory award, is consistent with the "national policy favoring arbitration." *Hall Street*, 552 U.S. at 588. It "maintain[s] arbitration's essential virtue of resolving disputes straightaway" and avoids "open[ing] the door to the full-bore legal and evidentiary appeals that can 'render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' . . . and bring arbitration theory to grief in post-arbitration process." *Id.* (citation omitted). *See also Quixtar, Inc. v. Brady*, 328 F. App'x 317, 320-21 (6th Cir. 2009) ("A district court should not hold itself out as an appellate tribunal during an ongoing arbitration proceeding, since applications for interlocutory relief result only in a waste of time, the interruption of the arbitration proceeding, and . . . delaying tactics in a proceeding that is supposed to produce a speedy decision." (quoting *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980))). Accordingly, because

---

[3]In *Stolt-Nielsen*, the Court reached a conclusion on ripeness that *appears* to be at odds with our ripeness ruling in *DCS - I*. *Stolt-Nielsen*, 130 S.Ct. at 1767 n.2. We address the merits of the ripeness analysis below. For present purposes, we note simply that *Stolt-Nielsen* confirms that judicial review of an interim arbitration award is available only if ripeness is established through the requisite showing of hardship.

the instant class determination award is undeniably an interim award, DCS has the burden of showing ripeness to establish jurisdiction for judicial review.

### C. Ripeness of DCS's Motion to Confirm

#### 1. *Correctness of the Ripeness Standard Applied*

The district court granted Dub Herring Ford's motion to dismiss DCS's motion to confirm the class arbitration award for lack of ripeness. The court considered the ripeness factors set forth in *DCS - I*:

> (1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage of the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits.

R. 43, Order, p. 3-4 (quoting *DCS - I*, 547 F.3d at 560). The district court's determination that the factual record is sufficiently developed to permit judicial review is not challenged. As to the other two factors, however, the court found that DCS could "not establish that it would suffer harm or a hardship if judicial review is denied at this stage of the proceedings." *Id*. at 4. The court reasoned that because Dub Herring Ford failed to obtain class certification, the potential harm to DCS involved in defending against class arbitration would never occur. *Id.* at 5.

The district court's analysis is faithful to the direction provided in *DCS - I*, where we observed, in holding that DCS's motion to vacate the clause construction award was unripe, that the "absence of hardship for DCS at this juncture renders DCS's motion to vacate the sort of premature adjudication the ripeness doctrine seeks to avoid." *DCS - I*, 547 F.3d at 563. The district court even parroted our reiteration of Judge Posner's colorful admonition that courts should remain "reluctant to invite a judicial proceeding every time the arbitrator sneezes." *Id.* (quoting *Smart v. Int'l Bhd. of Elec. Workers, Local 702,* 315 F.3d 721, 725 (7th Cir. 2002)).

DCS contends the district court should not have applied this ripeness test, noting that other circuits apply a less rigid standard and that the Supreme Court itself has

applied a two-part ripeness test, *sans* the likelihood-of-harm factor. The three-factor test set forth in *DCS - I* is essentially the law of the case and DCS has not presented any persuasive reason to abandon it in favor of any other circuit's standard. We acknowledge, however, that the Supreme Court, in *Stolt-Nielsen*, applied a two-factor ripeness test in a context practically identical to the situation faced in *DCS - I*. Is the two-factor test materially different? If it were applied here, would it produce a different result?

In *Stolt-Nielsen*, the Court reversed a Second Circuit decision. The Second Circuit had ordered that the district court's order vacating an arbitration panel's clause construction award be vacated. The Supreme Court ultimately held that the arbitration panel exceeded its powers by imposing class arbitration on parties whose contractual arbitration agreement was silent on the issue. *Stolt-Nielsen*, 130 S.Ct. at 1768-70. This substantive holding is not relevant to the present appeal. However, the Court had the occasion to consider the ripeness of the motion to vacate the clause construction award. Responding to objection by the dissent, the *Stolt-Nielsen* majority summarily held the matter was ripe based on two ripeness factors: "the fitness of the issues for judicial decision," and "the hardship of withholding judicial consideration." *Id.* at 1767 n.2 (quoting *National Park Hospitality Assn. v. Dep't of Interior*, 538 U.S. 803, 808 (2003)).

This test is nominally different from the three-factor standard we employed in *DCS - I*, but in practical effect, the distinction is one without a difference. In *Stolt-Nielsen*, the Court focused on the hardship element. The Court observed that "[t]he arbitration panel's award means that petitioners must *now* submit to class determination proceedings before arbitrators who, if petitioners are correct, have no authority to require class arbitration absent the parties' agreement to resolve their dispute in that way." *Id.* (emphasis added). The Court went on to hold that it was "clear on these facts that petitioners have demonstrated sufficient hardship." *Id.* In other words, the Court found sufficient hardship in the *imminent reality* that, as a result of the arbitration panel's *ultra vires* clause construction award, the petitioners would have to participate in class determination proceedings. Although the Court did not explicitly mention the

"likelihood" that the identified hardship would come to pass, the imminence of the hardship was manifestly critical to the Court's holding, distinguishing the majority's view of the issue from the dissent's, which viewed the arbitrator's partial award as the most "preliminary" decision the Supreme Court had ever approved for immediate judicial review. *Id.* at 1779 (Ginsburg, J., dissenting).

The facts and procedural posture of the case presented in *Stolt-Nielsen* are materially indistinguishable from those presented in *DCS - I*. Yet, what *Stolt-Nielsen* found to be ripe, we found not to be ripe. In *this* respect (i.e., the merits of the ripeness determination), the two decisions *may* be deemed in conflict.[4] What is important for

---

[4]Considering that the *Stolt-Nielsen* Court implicitly considered likelihood of harm, along with fitness and hardship, as we did in *DCS - I*, how are we to understand its different "ripeness" determination? The answer may lie in the nature of the hardship identified by each court and the likelihood that *that* hardship would come to pass. In each case, interestingly, the parties had not expressly argued hardship, so the court had to presume the "asserted" hardship. *See Stolt-Nielsen*, 130 S.Ct. at 1767 n.2 (noting that the ripeness issue was not pressed in or considered by the courts below); and *DCS - I*, 547 F.3d at 561 n.3 (noting that DCS did not address ripeness in its briefs). The *Stolt-Nielsen* Court presumed that the petitioners sought to vacate the clause construction award to avoid even the expenses associated with participating in preliminary class determination proceedings, irrespective of whether a class was ultimately certified. *Id.* at 1767 n.2. *This* hardship, the Court observed, was imminent, its likelihood a certainty.

In contrast, we presumed in *DCS - I* that DCS "sought to avoid the 'harm' of increased time, expense, complexity, and potential liability often associated with the defense against a class proceeding." *DCS - I*, 547 F.3d at 561. That is, we presumed that DCS was concerned about expenses and risks that would potentially materialize only if and after the arbitration panel, in a later interim award, "conclusively determine[d] that Dealers' claims *should* proceed as a class arbitration." *Id.* Because *this* hardship was contingent on "future events that may not occur as anticipated, or at all," we determined that "the likelihood of harm factor strongly weigh[ed] against finding the Clause Construction Award ripe for review." *Id.* at 562. Further, because DCS would have a prospective opportunity for judicial review if an *unfavorable* class determination award were forthcoming, we concluded that DCS would not "suffer any material hardship if review is withheld at this preliminary stage of arbitration." *Id.* at 563.

Thus, the difference in the two courts' ripeness determinations may be attributable not to application of two materially different ripeness standards, but to application of two substantially similar ripeness standards to similar but not identical types of hardship whose imminence or likelihood of occurrence was materially different. In light of this analysis, *Stolt-Nielsen* does not necessarily undermine the district court's ripeness ruling in this case. Also, in light of this analysis, it becomes apparent that *Stolt-Nielsen* is not necessarily at odds with our ripeness ruling in *DCS - I*, but may be distinguishable on the basis of the nature and imminence of the presumed hardship.

In assessing the significance of *Stolt-Nielsen*'s teaching on ripeness, moreover, it is important to recognize that the majority's entire discussion of ripeness is confined to one footnote. *Stolt-Nielsen*, 130 S.Ct. at 1767 n.2. The issue had not been argued by the parties or considered by the courts below. *Id.* The majority was reluctantly compelled to address the issue at all only because the dissent raised it. The Court had granted certiorari to decide "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act." *Id.* at 1764. The Court did not grant certiorari in order to clarify the law of ripeness, but to clear up confusion stemming from its earlier decision in *Green Tree Financial Corp. v. Bazzle*, 544 U.S. 444 (2003). The majority refused to be deterred by the dissent's suggestion that certiorari had been improvidently granted. This explains why the majority's ripeness discussion is summary and dismissive in nature, a fact that counsels against reading the decision's ripeness teaching more expansively than it deserves. *See Levin, Tax Comm'r of Ohio v. Commerce Energy, Inc.*, 130 S.Ct. 2323, 2335 (2010) (reversing the Sixth Circuit for having attributed

present purposes, however, is that the two decisions are substantially consistent in their determinations: (1) that an interim arbitration award is subject to judicial review under the FAA, 9 U.S.C. §§ 9 and 10, only if jurisdictional requisites, including ripeness, are otherwise satisfied; and (2) that the ripeness inquiry necessitates evaluation of the hardship posed to the movant in the event immediate judicial review were to be denied. It is therefore DCS's burden to identify cognizable hardship—under either standard—to establish its entitlement to immediate judicial review of the class determination award.

### 2. *Correctness of the Ripeness Determination*

In challenging the correctness of the district court's ripeness determination, DCS asserts a different form of harm or hardship than the district court considered. The district court held that the potential harm to DCS involved in defending against class arbitration would never occur and that therefore, DCS had failed to demonstrate that withholding judicial review would pose any hardship. On appeal, DCS acknowledges that it won the class determination battle and is no longer threatened, in *this* case, by the specter of class arbitration expenses and liability. Adopting a new approach, DCS now contends that the hardship posed by denial of immediate confirmation of the class determination award resides in the (a) postponement of judicial confirmation until after the arbitration panel renders its final award(s); and (b) the denial of repose and certainty of preclusive effect that would accompany a confirmed award.

DCS did not assert this argument in the district court. The issue is therefore forfeited. *See In re Hood*, 319 F.3d 755, 760 (6th Cir. 2003) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice."). A defect in the federal court's original jurisdiction is an issue that cannot be waived and must be raised *sua sponte* when noticed. *See Ku v. State of Tenn.*, 322 F.3d 431, 433 (6th Cir. 2003). Here, however, DCS failed to carry its burden of establishing that the district court had jurisdiction to consider its motion to confirm the interim award and now seeks to

---

unwarranted significance to an "unelaborated footnote" in an earlier Supreme Court opinion).

rehabilitate its failed effort based on arguments never made to the district court. To address the merits of DCS's new appellate arguments would be to permit an undeserved second bite at the apple under circumstances that do not implicate a miscarriage of justice. Yet, even if we consider the merits of the forfeited arguments, the outcome is unchanged.

DCS's new arguments are only weakly supported. First, DCS argues that its opportunity to obtain judicial review and confirmation of the class determination award may be entirely foreclosed if the one-year period of limitation prescribed by 9 U.S.C. § 9 has run before the arbitration panel issues its final award. Yet, no court could legitimately consider the one-year period to have begun running from the date of the interim class determination award after having denied judicial review for lack of ripeness. If the district court's dismissal of the motion for lack of ripeness is affirmed, then DCS's recourse is to seek judicial review after entry of the final award. DCS has neither argued nor cited any authority for the proposition that judicial review of the final award would not afford opportunity for review of earlier issued interim awards integral to the final award. DCS has thus failed to show that withholding of judicial review of the arbitration panel's favorable class determination award at this stage poses any imminent risk of cognizable harm in this case.

Absent immediate confirmation of the class determination award, DCS further contends, the award lacks the preclusive effect DCS needs to protect it from *other* claimants' potential efforts to obtain class arbitration of similar breach of contract claims in *other* arbitration proceedings. In particular, DCS refers to another pending putative class arbitration proceeding involving similar claims and commenced just four months after the instant arbitration, *Fox Valley Ford, et al. v. DCS,* in which the claimants are represented by the same counsel as the claimants in this case. DCS contends that counsel for the *Fox Valley Ford* claimants have made clear their intentions to pursue class arbitration proceedings in that case if the class determination award in this case is not confirmed.

In response, Dub Herring Ford contends that *Fox Valley Ford* involves dissimilar breach of contract claims. Yet, in any event, we remain unpersuaded that such "collateral hardship" (i.e., potentially incurring expenses in another case) is cognizable in evaluating the ripeness of DCS's motion for confirmation of an interim arbitration award in *this* case. In evaluating ripeness, the Supreme Court has recognized that the disadvantages of premature review ordinarily outweigh the burden created by the additional costs of—even repetitive—litigation. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735 (1998). The *Ohio Forestry* Court thus held that the possibility of potential litigation costs in other cases was not sufficient hardship by itself to justify immediate review of an otherwise unripe matter. *Id.* at 734-35. The Court observed that a case-by-case approach, albeit potentially frustrating and inefficient, is the traditional and normal mode of operation of the courts. *Id.* at 735.

Further, even if such collateral consequences could be considered "hardship," DCS's showing of the likelihood of this harm coming to pass is sketchy and hardly compelling. We note that the *Fox Valley Ford* case does appear to be on a parallel track. When the arbitration panel issued a clause construction award permitting the *Fox Valley Ford* claimants to pursue class arbitration, DCS's motion to vacate the award was assigned to and denied by the same district judge who denied both DCS's motion to vacate and motion to confirm in this case. *See Dealer Computer Services v. Fox Valley Ford*, 2008 WL 1837229 (E.D. Mich. 2008). DCS's appeal of that ruling was treated in conformity with our ruling in *DCS - I*. *See Dealer Computer Services v. Fox Valley Ford*, 310 F. App'x 749 (6th Cir. 2009) (vacating the order of the district court and remanding for dismissal for lack of ripeness). Since then, it appears further proceedings in the *Fox Valley Ford* case have been held in abeyance pending final resolution of the class certification question in this case. Considering this parallel history and the consistency with which the federal courts have treated both cases, DCS's suggestion that it is exposed to imminent hardship is not persuasive. The alleged hardship posed by the *possibility* of unnecessary, duplicative expenses has not been shown to be substantial in amount or likelihood. Nor has DCS shown that there is any substantial likelihood of an inconsistent class determination award in *Fox Valley Ford*.

In short, the new appellate arguments made by DCS in attempting to carry its burden of showing ripeness—if they are considered at all—are no better than the old arguments the district court rejected. The district court's order dismissing the motion to confirm for lack of ripeness must therefore be upheld.

## IV. CONCLUSION

Despite DCS's protestations that confirmation should be a simple procedure that would ultimately enhance efficiency in managing and resolving the dealers' arbitration claims, this very judicial review experience, still pending eighteen months after the arbitration panel's interim class determination award was issued, and having seemingly accomplished nothing but delay, starkly demonstrates why the courts should be vigilant to safeguard arbitration proceedings from unwarranted judicial interference. For all the foregoing reasons, the district court's order of dismissal is **AFFIRMED**.

———————————

**DISSENT**

———————————

SAMUEL H. MAYS, JR., District Judge, dissenting. Dealer Computer Services, Inc. ("DCS") appeals from the district court's dismissal of its Motion to Confirm the arbitrators' award finding that Dub Herring Ford and the proposed class of automobile dealers whom it represents (collectively, the "Dealers") should not be allowed to go forward with their arbitration as a class arbitration. The district court found that DCS' action was not ripe, basing its conclusion on a prior published opinion of this court in this case. *See Dealer Computer Servs., Inc. v. Dub Herring Ford*, 547 F.3d 558, 559 (6th Cir. 2008) ("*DCS I*"). Because, following the Supreme Court's recent decision in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), this court's prior holding in *DCS I* is no longer the law of this or any other circuit and DCS has otherwise demonstrated that its Motion to Confirm is ripe, I respectfully dissent.

**I.**

DCS sells computer software systems to automobile dealerships around the country. These systems allow Dealers to display currently available automobile parts and prices to their customers. The Dealers allege that DCS breached its contracts with them by failing to negotiate an extension of its agreement with Ford Motor Company allowing Dealers to continue to view Ford parts and their prices on DCS' system. Dealers filed a series of arbitration actions against DCS and sought to proceed as a class arbitration. The arbitrators ruled initially that the arbitration agreement found in all of DCS' form contracts with Dealers permitted the arbitrators to hear a class arbitration. DCS sued in federal district court to vacate the arbitrators' decision as exceeding their powers under the arbitration agreement and as in "manifest disregard of the law." *DCS I*, 547 F.3d at 560. The district court declined to vacate the arbitrators' decision, and DCS appealed to this court. In a published opinion, a panel of this court vacated the district court's judgment and remanded with instructions to dismiss DCS' suit on the ground that it was unripe, depriving the federal courts of jurisdiction. *Id.* at 564.

When the case returned, the arbitrators held, in a "Partial Final Class Determination Award," that the Dealers could not proceed with their claims as a class. DCS then returned to federal district court, seeking to confirm the arbitrators' class determination. *See* 9 U.S.C. § 9 (providing that federal district courts may enter orders confirming arbitration awards). The district court, following the ripeness analysis employed by this court in the parties' prior appeal, dismissed DCS' Motion as unripe. *See Dealer Computer Servs., Inc. v. Dub Herring Ford Lincoln Mercury, Inc.*, No. 07-10263, 2009 U.S. Dist. LEXIS 45325, at *9 (E.D. Mich. May 29, 2009). DCS timely appealed.

## II.

### A.

In *Stolt-Nielsen*, a corporation that regularly ships liquids via tanker vessels commenced an arbitration proceeding against Stolt-Nielsen, alleging that Stolt-Nielsen had conspired to violate the antitrust laws through price fixing. 130 S. Ct. at 1764-65. The corporation sought class arbitration status, and both parties agreed that their contract was silent about whether they had agreed to allow class claims in arbitration. *Id.* at 1765-66. The arbitrators, after hearing evidence, determined that a silent contract allows class arbitration. *Id.* at 1766. Stolt-Nielsen filed a motion in the district court seeking to vacate the arbitrators' construction of the arbitration agreement as 1) beyond their power and 2) in manifest disregard of the law. *Id.*; *see also* 9 U.S.C. § 10(a)(4) (allowing a court to vacate an award if the arbitrators "exceeded their powers"). The Supreme Court held that, absent a contractual basis, arbitrators may not hear class claims. *Stolt-Nielsen*, 130 S. Ct. at 1775. Where an agreement is silent, the arbitrators lack the power to hear a class arbitration. *Id.*

Importantly for this case, the Court also responded to the dissent's primary argument that Stolt-Nielsen's Motion to Vacate was premature because it was unripe. *See id.* at 1777 (Ginsburg, J., dissenting). The majority held that the claim was ripe because, if Stolt-Nielsen could not presently seek review, it "must now submit to class

determination proceedings before arbitrators who . . . have no authority to require class arbitration." *Id.* at 1767 n.2 (majority opinion). The Court also viewed it as certain that, had Stolt-Nielsen refused to abide by the arbitrators' decision, it would be subject to a motion to compel under 9 U.S.C. § 4 to force it to arbitrate the class claims. *Id.* Responding to the dissent's argument that the Court would allow parties to challenge merely procedural decisions by arbitrators, the majority reasoned that a shift from bilateral arbitration to class arbitration wrought "fundamental changes." *Id.* at 1776. Under the rules of the American Arbitration Association, participants in class arbitrations no longer enjoy "the presumption of privacy and confidentiality" that applies to bilateral arbitrations. *Id.* at 1776 (citing AAA Class Rule 9(a)). Class arbitrations "no longer resolve[] a single dispute between the parties to a single agreement, but instead resolve[] many disputes between hundreds or perhaps even thousands of parties." *Id.* Thus, parties must have the ability to seek court review of arbitrators' construction of a class clause in an arbitration agreement. *Id.*

Stolt-Nielsen arrived at the Supreme Court in the same procedural posture as DCS in its prior appeal to this court. As in *Stolt-Nielsen*, DCS had filed a Motion to Vacate under § 10(a)(4) of the Federal Arbitration Act ("FAA"), alleging that the arbitrators' determination that the arbitration agreement allowed for class arbitrations exceeded their power and was in "manifest disregard of the law."[1] *Compare id.* at 1766, *with DCS I*, 547 F.3d at 559. Similarly, a primary disagreement between the parties was whether the controversy was ripe. *Compare Stolt-Nielsen*, 130 S. Ct. at 1767 n.2 (concluding that a suit challenging the construction of a class arbitration clause was ripe), *with DCS I*, 547 F.3d at 564 (concluding that a suit challenging construction of a class arbitration clause was *not* ripe). Although one may attempt to distinguish *Stolt-Nielsen* by asserting that DCS faced a different hardship in its prior appeal, a hardship that was less compelling, that argument fails because DCS faced the same possibility as Stolt-Nielsen: a motion to compel arbitration if it refused to abide by the arbitrators'

---

[1]Both challenged awards were termed "Partial Final" awards. *See Stolt-Nielsen*, 130 S. Ct. at 1779 (Ginsburg, J., dissenting); *Dealer Computer Servs. v. Dub Herring Ford*, 489 F. Supp. 2d 772, 777 (E.D. Mich. 2007), *vacated by* 547 F.3d at 559. Both cases addressed arbitrations under the rules of the American Arbitration Association. *See Stolt-Nielsen*, 130 S. Ct. at 1776; *DCS I*, 547 F.3d at 563.

award.  *Cf. Stolt-Nielsen*, 130 S. Ct. at 1767 n.2.  Indeed, the *Stolt-Nielsen* dissenters explicitly acknowledged that the majority had abrogated this court's prior decision in this case.  *See id.* at 1779 (Ginsburg, J., dissenting) (citing this court's prior holding in *DCS I*, 547 F.3d at 559, to demonstrate that the majority's holding changed the law by affirming the federal courts' "[r]eceptivity to review . . . preliminary rulings rendered by arbitrators").  Because the facts and procedural posture of *DCS I* are materially indistinguishable from those in *Stolt-Nielsen*, the Supreme Court's recent decision abrogates this court's prior holding.  Therefore, that holding cannot support the proposition that DCS' current Motion is unripe; and citation to it for support is error.

**B.**

Without the support of this court's prior holding, it is difficult to argue that a procedurally later development is unripe for consideration when the Supreme Court has held that an earlier procedural ruling is ripe for confirmation or vacatur.  The arbitrators' decision rejecting class arbitration disposes of "a separate, discrete, independent, severable issue."  *See Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984) (citation omitted).  That is the standard this court has long applied for entertaining motions to confirm interim arbitral decisions. *Id.*  The Dealers argue that a decision rejecting class arbitration is merely procedural and has no impact on the substantive rights or merits of any claim.  Their argument echoes the objections of the *Stolt-Nielsen* dissenters, who argued that the Supreme Court's holding that a decision at an even earlier stage of class proceedings "was abstract and highly interlocutory." *Stolt-Nielsen*, 130 S. Ct. at 1778 (Ginsburg, J., dissenting).  The Supreme Court majority rejected that analysis, noting that the "fundamental changes" effected by class arbitration status were enough to require federal court review when the issue of whether the

arbitrators had the power to decide a class arbitration was in dispute.[2]  *Id.* at 1776 (majority opinion).

The concerns identified by the Supreme Court in *Stolt-Nielsen* apply all the more to this case in its current, later procedural posture.  First, the close of class certification proceedings is such a "fundamental change" in the life-span of a lawsuit that the Federal Rules of Civil Procedure expressly grant courts of appeal the authority to hear appeals from district courts' orders granting or denying certification.  *See* Fed. R. Civ. P. 23(f). This acknowledges that the grant or denial of class certification often has the effect of a final ruling on the merits.  If a court denies certification, plaintiffs will often drop their claims; if a court grants it, the defendants may settle.  *See* Fed. R. Civ. P. 23, Notes of the Advisory Comm. on 1998 Amends.  Class decisions in arbitration are no different. The *Stolt-Nielsen* dissenters refused to extend their conclusion that a motion contesting the ability of the arbitrators to decide class certification was unripe to motions filed *after* the arbitrators had issued a final ruling on class certification.  *See* 130 S. Ct. at 1778 & n.4 (Ginsburg, J., dissenting) (citing Rule 23(f) and distinguishing *Stolt-Nielsen*'s procedural posture from that of a party contesting arbitrators' final ruling on whether to certify a class).  The dissenters thereby suggested that even they, when faced with the situation now before this court, would  entertain a motion to confirm or vacate.[3]

Second, the concession that a motion to vacate the present award by the Dealers would be ripe effectively concedes that this court has jurisdiction over the present

---

[2]Nor would it be correct to characterize the Supreme Court's holding that it had jurisdiction as summary or dismissive.  "[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."  *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (citations omitted).  Ripeness is a constitutional prerequisite to a court's proper exercise of its jurisdiction.  *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (*en banc*).  That the Supreme Court included its conclusion that  Stolt-Nielsen's Motion to Vacate was ripe in a footnote is not material.  *See Stolt-Nielsen*, 130 S. Ct. at 1767 n.2.  That holding was a vital part of the Court's opinion because, absent its finding of jurisdiction, all that came after would have been an unconstitutional advisory opinion.  *See* U.S. Const. art. III, § 2, cl. 1 (limiting the jurisdiction of the federal courts to "Cases" and "Controversies").

[3]To the extent that one can find any "discretion" in a court's jurisdiction, this court should exercise it in favor of DCS because this court denied DCS a hearing on the merits about the validity of the class arbitration clause.  *Compare Stolt-Nielsen*, 130 S. Ct. at 1767 n.2 (holding that motion to vacate the arbitrators' decision that the arbitration clause allowed for class arbitration was ripe), *with DCS I*, 547 F.3d at 564 (concluding that such a claim was not ripe).

Motion. The provisions of the FAA are not severable. *See* 9 U.S.C. §§ 9-10 (statutory provisions conferring authority on the federal courts to confirm *or* vacate an arbitral award). Had the Supreme Court refused to vacate the arbitrators' decision in *Stolt-Nielsen*, that refusal would have had the same effect as confirming it. The language of the FAA makes this clear. A federal court "*must* grant [an order confirming an arbitral award] *unless the award is vacated*, modified, or corrected." 9 U.S.C. § 9 (emphasis added). Where there is jurisdiction to vacate an award, there is of necessity jurisdiction to confirm it. No authority – other than argument by analogy to this court's prior, abrogated decision – supports severing the FAA's remedies. The Dealers concede that, if this court concludes a motion to vacate by them would be ripe, DCS' current Motion to Confirm must also be ripe. Audio recording: Oral Argument at 21:30 - 22:11 (Aug. 4, 2010) (on file with the clerk of the court) [hereinafter "Oral Argument"].

The potential for an aggrieved party to vacate the award explains why failure to confirm would harm DCS. *See* 9 U.S.C. § 9 (noting that the only two requirements for confirmation are 1) an agreement "that a judgment of the court shall be entered upon the award" and 2) an award); *cf. Stolt-Nielsen*, 130 S. Ct. at 1767 n.2 (holding that the ability of the respondent to file a motion to compel Stolt-Nielsen to abide by the arbitrators' decision that they could hear class claims constituted the harm necessary to make the motion to vacate ripe). If there were any doubt about ripeness, the Dealers removed it at oral argument when they confirmed that, if this court refuses to confirm the arbitrators' decision prohibiting the Dealers' claims from moving forward as a class, the Dealers will *relitigate* those claims on remand. Oral Argument at 17:05 - :44. The harm is thus concrete and particularized, not potential or theoretical. *See Warshak*, 532 F.3d at 525 (requiring that a claim arise from "a concrete factual context and concern[] a dispute that is likely to come to pass" for a court to find ripeness). It is also the harm confirmation is meant to address – that of endless relitigation of the same claims. Parties to an arbitration proceeding are entitled to finality just as any party to court-based litigation is. That is why Congress gave the federal courts the ability to confirm arbitral awards; an unconfirmed award lacks finality. *See* 9 U.S.C. § 9; *Island Creek Coal Sales*, 729 F.2d at 1049 (confirming an interim arbitral award on a contract issue that, like the

present dispute about class arbitration status, was "self-contained"). Victorious parties in arbitration may invoke the jurisdiction of the federal courts. To suggest otherwise would threaten the arbitral process.

Third, the Dealers appear to base much of their argument on the idea that allowing piecemeal adjudication would serve to undermine the "national policy favoring arbitration." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). The Supreme Court undoubtedly had this policy preference in mind when considering its decision in *Stolt-Nielsen*. Nonetheless, the Court considered the change class status effects so "fundamental" as to require the possibility of federal court intervention through vacatur or confirmation. 130 S. Ct. at 1776. A public-policy principle cannot revive an abrogated case or overrule guidance from the Supreme Court. Moreover, principles of public policy are for elected legislators to balance. Congress has spoken on this policy: federal courts may confirm arbitral awards. 9 U.S.C. § 9.

## III.

This court denied DCS a decision on its prior Motion to Vacate. *See DCS I*, 547 F.3d at 564, *abrogated by Stolt-Nielsen*, 130 S. Ct. at 1767 n.2; *see also Stolt-Nielsen*, 130 S. Ct. at 1779 (Ginsburg, J., dissenting) (noting that the Supreme Court majority abrogated *DCS I*). It is entitled to an order of confirmation now that the arbitrators have made their decision about whether class proceedings are appropriate. Because the court concludes otherwise, I respectfully dissent.